Jackson, J.
The question reserved on making the last decree in this case was, what proportion the tenant for life, and the reversioner, were respectively entitled to, of the estate and effects, which should be received by force of that decree. The sum due from the former trustee, with interest, was 32,155 dollars; and he was ordered to pay that sum with the costs of the suit. If the whole of this money had been received by the trustee, who was then appointed, there would have been no further question in the case. The costs would have been paid to the plaintiffs; the interest to the annuitant; and the principal sum of 30,000 dollars would have been retained by the trustee, to be disposed of according to the provisions of the will, under which it is held.
But it was apprehended at that time, that the former trustee would be unable to pay the whole that was due ; and it appears from the report of the new trustee, that the whole amount received by him is 26,920 dollars; the greater part of which has been received in the real estate mentioned in the former decree, according to the appraisement thereof therein mentioned. It appears, therefore, that a considerable loss was sustained, whilst the fund was in the hands of the former trustee; and we have now to apportion that loss upon the respective parties, who were interested in the fund.
*302 This loss will be apportioned in the same manner, as if it had arisen from the fall in the price or value of any public stocks, or of any land, in which the fund should have been invested [ * 366 ] according to the provisions of the will. * It would be unjust, and contrary to the manifest intent of the testator, if the tenant for life, on the one hand, should continue to receive the whole amount of the interest on the original fund, after the principal had been thus reduced; or if, on the other hand, the income should be applied to replace the principal. In the one case, the tenant for life would be left, for an indefinite period, without any support or benefit from the intended bounty of the testator and in the other, the reversioner might lose the whole that was in tended for him.
The former trustee had paid all that was due to the tenant fov life, up to the 26th of August, in the year 1818. This suit was soon afterwards commenced, and the result of it has proved that a great loss had then occurred. If the whole capital, then remaining, could have been taken at once by a new trustee, the tenant for life would have been entitled to whatever income this reduced capital should produce from that time. But the interest, which has accrued pend ing this suit, is mixed with the principal; and that interest, or, in other words, the amount due as income to the tenant for life, must be deducted, in order to ascertain what amount of principal is left in the hands of the new trustee. On the other hand, the amount of principal in the hands of the new trustee must be ascertained, in order to decide what income is due to the tenant for life; because she is not entitled to á larger amount of income between the 26th of August, 1818, and the time when the new trustee was appointed, than she will be entitled to after that time. The whole loss had then occurred, although the precise amount of. it could not be then ascertained.
It appears that the interest, at the time of the former decree, was computed for the period of one year, two months, and eleven days. Supposing the amount received by the new trustee, by force of that decree, to be 26,000 dollars ; the proportion of it due to the tenant for life, as interest for the period before mentioned, and ' * 367 ] upon the * principle above stated, would be 1742 dollars, 50 cents. This sum, deducted from 26,000 dollars, would leave 24,257 dollars, 50 cents, as the new capital; and this new capital would give 1455 dollars, 45 cents, annual interest at six per cent.; and at this rate, the interest for one year, two months, and eleven days, would make the aforesaid sum of 1742 dollars, 50 cents. We have assumed here a certain sum, for one that is uncertain, in order to explain the principle ; but whatever shall *303 prove to be the value of the estate and effects received by the new trustee, it can be easily apportioned between the tenant for life and the reversioner, by the above mode of computation.
We are next to consider how the value of the estate and effects, received by the new trustee, shall be ascertained; and this question is connected with some others, that are suggested in the report 01 representation of the trustee. The property now in his hands is not to be considered as purchased by him. It is apparent from his report, that a considerable part of it is of such a description, that he would not, and ought not to have voluntarily invested the trust fund in it. Although conveyed to him by the former trustee, it is to be considered as if taken in execution ; being all that could be obtained from the former trustee, towards the sum due from him.
The new trustee ought to dispose of this property, as he would of merchandise, or any other effects, taken in execution, and invest the proceeds in productive real estate, or in public stocks, for the benefit of the parties interested therein, according to the provisions of the will. If any part of the real estate is now productive, and such as he would purchase in the exercise of a sound discretion, if he had money in his hands to be invested, he will of course retain that part. But it is very clear that he ought not to retain any, that lie would not think it proper to purchase for that purpose.
He will not, of course, hold any estate subject to the dower of Mrs. Winslow. This would be doing injustice * to the tenant for life, who is entitled to have the [# 368 ] whole fund made productive for her benefit, as far as possible without prejudice to the reversioner. If he could invest a part of the fund in such a reversionary interest, he might with the same reason invest the whole; and in this way the whole income, instead of going to the tenant for life, as intended by the testator, might be in effect appropriated to her son, and go to increase the value of his reversion. If the trustee can purchase Mrs. Winslow’s right of dower in any part of the estate in his hands, on such terms as to make the estate, when thus disencumbered, productive in proportion to its cost, and an advantageous investment of the fund, it is undoubtedly allowable and proper for him to do so. It would be no more than investing a like amount of the fund in any other real estate.
If this cannot be done, he will find it necessary, in order to comply with the directions of the will under which he is acting, to sell the whole as soon as it can be done upon reasonable terms, and to invest the proceeds in public stocks, or in some real estate that will produce a present income in proportion to its cost.
In all this he needs no direction or order from the Court. He is *304 to follow the directions of the testator, who had a right to prescribe, and has prescribed, the course to .be pursued in this respect. The trustee incurs no responsibility, whilst pursuing his authority with good faith and sound discretion, and exercising the same diligence, which every prudent man would bestow on his own affairs.
As to the question of repairs upon the real estate, if the trustee should purchase a dwelling-house or other building, the necessary expense of putting it in a condition to be leased might well be con sidered as part of the original cost or purchase money; whilst the expense of keeping it in repair afterwards, would in common cases be a charge on the income.
The costs, awarded against Mr. Winslow, must be considered as received by the new trustee, and included in [ * 369 ] * the payment made to him. This amount he must pay over to the complainants in this suit. He must also pay out of the funds in his hands the necessary and reasonable expenses of the suit against Winslow. These expenses, being incurred for the benefit of both the parties interested in the fund, are a proper charge upon the whole, and to be deducted before any partition or apportionment between them.
After the trustee has ascertained, by a sale or otherwise, the actual value of the estate and effects that have come to his hands (exclusivo of any interest, rent or income received by him), he will deduct therefrom the costs and expenses of the suit, as above directed ; and will divide the residue between the tenant for life and the reversioner, according to the rule of computation above stated. He will then pay over to the complainants Parsons and his wife, in money, the amount that shall appear to be due to them, as income upon that computation; and the residue will be retained in his own hands, as the capital or principal sum, to be disposed of according to the will of the testator, John Gray.