<sub>o</sub> Edward D. Sohier *vs.* Elizabeth Eldredge & others.

Succession and legacy duties payable under the U. S. St. of 1864, *c.* 173, in respect to the interest of the *cestui que trust* in a gift by a will, made before the passage of that statute, of a fund to trustees, "to receive and collect the income and produce thereof, and, after deducting all needful and proper costs, charges and expenses, to pay the residue of said income" to said *cestui que trust* during her life, are a charge upon the income of the fund.

If the owner of land leased for a rent payable quarterly dies between two quarter-days and devises the land to trustees "to receive and collect the income and produce thereof, and, after deducting all needful and proper costs, charges and expenses, to pay the residue of said income" to A. during her life, and on A.'s death the capital to B., the rent which falls due on the quarter-day next after the death is not apportionable between the income and capital of the fund, but goes to the life tenant.

A fund, consisting partly of two wharves out of repair, was devised to trustees "to receive and collect the income and produce thereof, and after deducting all needful and proper costs, charges and expenses, to pay the residue of said income" to A. during her life, and on A.'s death the capital to B.; with "full power and authority" to the trustees "to invest, reinvest and change any and all property of which the trust premises shall be at any time composed, in such manner as they may deem most beneficial for the parties interested in the fund." *Held*, that the trustees had power to invest capital of the fund in repairing and reconstructing the wharves in such a manner as to increase their value to the full extent of the amount expended.

Bill of interpleader filed by one of the executors and trustees under the will of John W. Trull.

The bill alleged that Trull died at Newton April 12, 1867, leaving a will, made November 11, 1858, which was proved and allowed in the probate court for Middlesex May 28, 1867, as his last will and testament, and the probate thereof affirmed in this court on appeal; that by this will he devised to Elizabeth Eldredge (who was his only child, and at the time of his death was fifty-one years old and a widow without issue) the use

and improvement during her life of his dwelling-house in Boston, and then, after giving certain legacies, (not material here to be stated,) gave the residue of his estate, including the reversion of the dwelling-house, to John T. Heard and Edward D. Sohier (the plaintiff) in trust " to receive and collect the income and produce thereof, and, after deducting all needful and proper costs, charges and expenses, to pay the residue of said income, from time to time," to Mrs. Eldredge, for her sole and separate use, and made these further provisions: " At and after the decease of my said daughter, I give the said trust premises to her issue." " If my said daughter shall leave no issue surviving her, the trust premises shall, at her decease, be divided into two equal parts or portions, one of which parts shall go to and be held by the said John T. Heard and his heirs in fee forever, and the other part shall be divided among my heirs at law, as though I died intestate. I give my said trustees and their successors, and any persons acting as trustees under this will, full power and authority to sell any and all real estate of which the trust premises shall be at any time composed, and to make any and all deeds, and do any and all acts necessary or proper for carrying into full effect any and all such sales; and the purchasers from such trustees shall not be bound to see to the application of the purchase money. And I give my said trustees, and their successors, and any persons acting as trustees under this will, full power and authority to invest, reinvest and change any and all property of which the trust premises shall be at any time composed, in such manner as they may deem most beneficial for the parties interested in the fund, but I recommend them, whenever a good opportunity offers, to invest the trust moneys in real estate, situate in the city of Boston, which I consider the best and safest investment, or in notes secured by mortgages of real estate in said city." " I constitute and appoint the said John T. Heard and Edward D. Sohier executors of this my will."

The bill further alleged that, on October 22, 1867, the plaintiff and Heard were duly appointed by the court executors and trustees under this will, and assumed the trusts; that the real estate devised to them as trustees consisted of parcels in An-

dover, of the value of $450; in Dorchester, of the value of $15,000; and in Boston, (exclusive of the reversion of the dwelling-house,) of the value of $206,750; and that the personal estate which came to them was of the value of $446,064.42; that Mrs. Eldredge then was, and still remained, without issue; that her beneficial interest in the real estate in Andover was $312.79, in Dorchester, $10,615, and in Boston, (not including the reversion of the dwelling-house,) $143,707; that " by the laws of the United States the trustees were bound to pay, and did pay, a succession duty [specified particularly, in amount] upon the beneficial interest which said Eldredge took under the will in said real estate;" that " by the laws of the United States the said Heard and the plaintiff, as executors or trustees, were also bound to pay, and did pay, a legacy duty [also specified, in amount] upon her beneficial interest in said personal estate," the value of which beneficial interest was $310,049; and that, " as matter of convenience, the said Heard and the plaintiff paid the United States succession duty [also specified, in amount] assessed upon said Eldredge's life interest in said dwelling-house."

It also alleged that, " at the death of said testator, different portions of his real estate were under lease, or hired by tenants who paid rent quarterly therefor, and the quarters had commenced, but were not terminated, on the day of his death, and the rents therefor were accruing, and had not then become due and payable."

It further alleged that the testator, before his death, became insane, and was put under guardianship; that a large part of the real estate then owned by him, and devised to Heard and the plaintiff as trustees, consisted of two wharves on Causeway Street in Boston, of the value, respectively, of $50,000 and $63,000; that the guardians entered into oral negotiations with William A. Kenrick to repair one of these wharves, and Kenrick, before the testator's death, made certain preparations for making the repairs; that, after the testator's death, the trustees finally agreed with Kenrick to repair the wharf substantially upon the terms and in the manner proposed by the guardians,

and spent $7940.68 on the repairs; and that, through Kenrick, they also spent $18,729.51 in repairing and partly rebuilding the other wharf; and the bill set forth minutely the repairs and alterations in the structure of the wharves, so made, and the condition of the wharves at the time of the testator's death, which rendered them needful, and also an account of all the expenses in detail.

The bill finally alleged that Mrs. Eldredge claimed that the said succession and legacy duties, or some part thereof, were payable by the trustees out of the capital, and not out of the income, of the trust fund; "that all the rents for the quarters which had commenced before, and did not end till after, the death of the testator, belong to said Eldredge as income," and that the sums paid by the trustees for repairing and reconstructing the wharves should be charged to the capital and not to the income of the trust fund; while, on the contrary, those entitled to the reversion after the death of said Eldredge either now claimed, or might hereafter claim, that said sums paid for duties and for repairs were properly charges on the income of the fund, and that the said rents should be apportioned.

The prayer of the bill was, that Mrs. Eldredge on one side, and those entitled to the reversion on the other side, might interplead as to these several issues; that the plaintiff might have the instructions of the court in the premises; and for general relief; and, besides joining Mrs. Eldredge and John T. Heard as defendants, it joined forty-six other persons, by name, as heirs of the testator.

Mrs. Eldredge, protesting that she was the only heir at law of the testator, that no other persons than herself and Heard were interested in his estate, and that all other parties joined in the bill as defendants, as if heirs of the testator, were improperly joined, answered, substantially admitting the allegations of fact in the bill, and making claim as therein alleged, and alleging further "that said repairs, so called, of the wharves, are permanent in their nature, and amount to the building of new structures of different kind and materials from the original, and that said wharves have been rendered thereby better and more

valuable than when said wharves were originally erected." All but three of the forty-six alleged heirs of the testator also answered, making in like manner admissions of fact, and alleging claims as in the bill alleged. And the case was reserved by *Wells*, J., for the determination of the full court, on the bill, answers, and a statement of facts agreed as to the negotiations of the guardians with Kenrick; which statement was signed by Heard with the other parties, and is now immaterial.

*W. Minot, Jr., & F. V. Balch,* for Mrs. Eldredge.

*D. S. Richardson & G. F. Richardson,* for some of the alleged heirs.

*G. D. Noyes,* for others of said alleged heirs.

AMES, J. 1. There can be no doubt that the money paid by the plaintiff and his coexecutor as the legacy and succession taxes upon the value of Elizabeth Eldredge's beneficial interest in the testator's real and personal estate, under his last will and testament, was properly chargeable against such funds belonging to her as came into their hands as income, and was not a charge against the capital or principal of the fund which they were to hold until her decease. It is plainly the meaning of the statute of the United States, usually known as the internal revenue law, passed June 30, 1864, (U. S. St. 1864, *c.* 173,) that whoever takes the benefit of a legacy must take it subject to the burden of the tax provided for by that statute; §§ 124, 125; and the rule is the same in regard to the succession of real estate. § 133. Where, by the operation of the bequest, devise or descent, the property passes directly to the beneficiary or successor, there is of course no question as to the interpretation of the statute. Where, as in this case, it goes into the hands of trustees, the statute leads to substantially the same result. She has in actual possession and enjoyment a beneficial interest in the bequest of the testator's personal estate, and also in the succession of his real estate. §§ 126, 127. In all such cases, where the property is in charge of trustees, they are declared to be subject to a tax, varying in amount according to the relationship of the party beneficially interested to the testator, but in all cases to be assessed upon the clear value of such party's inter-

est in such property. That is to say, the trustees were required to pay, and have paid, her tax; and by the terms of the statute, (as amended by the statute of July 13, 1866,) every tax so paid is to be deducted from the particular legacy or share on account of which the same is charged. U. S. St. 1866, *c.* 184, § 9. As no such taxes existed, or were anticipated, when the will was made, the testator of course made no provision in relation to them. Like the income tax, the tax on watches, or on carriages, and many other burdens growing out of public necessities, they must fall where for public reasons the sovereign power of the government has seen fit to place them. We cannot alter the last will of the testator to meet a new and unforeseen state of things in this respect. The clause in the will which requires the executors to receive and collect the income of the trust fund, and, after deducting all needful and proper costs, charges, and expenses, to pay the residue of said income to her, does not throw any light upon this subject. The costs, charges and expenses there spoken of evidently are such as are incidental to the management of the trust property, and the receipt, collection and disbursement of the income, and cannot in any sense include the payment of the tax by law imposed upon her beneficial interest in the property. She still has all that the will intended to give her, although the national legislature has seen fit to consider the inheritance of property as a fit subject of taxation.

2. With regard to the rents that became due from tenants soon after the testator's decease, we think that they constitute a part of the income or produce of the residuary fund; and that the fact that these rents were paid for a period of occupation, a part of which was before his decease, is wholly immaterial. No rent was due from any tenant till the quarter-day arrived, and then the whole became due to these executors. The terms "income and produce" are very comprehensive. There is nothing in the will to indicate that the testator meant that the property should be capitalized, and subjected to a precise valuation as of the date of his death. The provision is, that the residue, not required for the payment of legacies, debts and incidental ex-

penses, should constitute the trust fund, and whatever that fund should produce should go to his daughter for life. Rents that had not become payable at the testator's decease did not make a part of the residue then existing. There is nothing in the provisions of the Gen. Sts. *c.* 97, § 23, inconsistent with this construction of the residuary bequest; and § 24 is not applicable to it. The rents in question may be fairly included in the bequest of the income and produce of the residuary fund, intended for the benefit of the daughter.

3. A question is raised in relation to the large expenditures for the repair and reconstruction of the two wharves. It is insisted, on one side, that all of that outlay was in the nature of repairs, and for the purpose of increasing the income of the fund for the benefit of the daughter, Mrs. Eldredge, and for that reason should be charged to and paid from that income; while the other side contends that all that was done was necessary for the preservation of the property, or at least had the effect greatly to increase its value, and was so much to the permanent advantage of the estate as to be a proper charge against the principal of the residuary fund. The general rule undoubtedly is, that a tenant for life cannot make repairs or permanent improvements upon the estate, at the expense of the inheritance. This rule, however, is not absolutely without exceptions. Thus it has been held that a life tenant was justified in completing, at the expense of the estate, a mansion-house which had been begun by the testator. *Hibbert* v. *Cooke,* 1 Sim. & Stu. 552. *Dent* v. *Dent,* 30 Beav. 363. The expense of putting a building into a tenantable condition may be a charge upon the fund, while the expense of keeping it in repair afterwards should be payable from the income. *Parsons* v. *Winslow,* 16 Mass. 361. In *Caldecott* v. *Brown,* 2 Hare, 145, 146, the court say (Wigram, V. C.) that it is not to be laid down " as an imperative ru'e, that no case could arise in which the court would sanction the expenditure of moneys by a tenant for life for the benefit of the inheritance, by making such expenditure a charge upon the inheritance. The case may be suggested of a devise of lands in strict settlement, and a direction to lay out personal estate to the same

uses : it might be more beneficial to the remaindermen that a part of the trust fund should be applied to prevent buildings on the settled estate from going to destruction, than that the whole should be laid out in the purchase of other lands."

It appears to us, however, that the question whether these expenditures are chargeable to the principal or to the income of the residuary fund depends upon the terms of the will from which the trustees derive their authority, rather than upon any of the general rules of law as to the right of a tenant for life to charge expenses of that kind in whole or in part to the inheritance. It is to be remembered that none of these alterations and improvements were made by Mrs. Eldredge, or at her request; neither does it appear that she was consulted about them, or that they were made with any peculiar reference to her interest; and if the money expended upon them was a part of the trust fund, it was money of which she was entitled to the interest. For this reason, many of the authorities cited, and many of the arguments urged, by the learned counsel for the heirs at law, can hardly be considered applicable to the question. The whole of this business of repairing and improving the wharves was the act of the trustees in the course of their administration of their trust. It was left entirely to their discretion to decide whether the best interests of all parties required that the two wharves and their appurtenances should be sold, in order that the proceeds might be invested in some other form, or should be repaired and improved, with a view to their increased value and productiveness. We are bound to presume that in deciding this question they acted in good faith, and upon their best judgment, with a view to the proper administration of their trust. By the terms of the will, a very large discretion as to the management of the property was intrusted to them. They had "full power and authority to invest, reinvest and change any and all property of which the trust premises shall be at any time composed, in such manner as they may deem most beneficial for the parties interested in the fund " There is not the slightest ground for the suggestion that the testator intended that his daughter should be required to use and enjoy that par

ticular portion of his property in substantially the same condition as that in which he had himself enjoyed it in his lifetime. or that it should remain in the family, or that she should permanently derive her income, in part, from that particular investment. On the contrary, it was subject to change at the discretion of the trustees, like all the rest of the property. The testator expresses his own preference for real estate in the city of Boston, but he does that merely as a recommendation, and not as one of the rules of the trust. If, among the various modes of changing and reinvesting any part of the trust property, the trustees should see' fit to purchase other real estate, they could lawfully do so. They would have an equally clear right, by judicious and proper improvement, to increase the value and productiveness of estates already in their hands. It is not claimed that the outlay which they have made was injudicious or unreasonable; and it does not seem to be denied that it has increased the value of the wharves to the full extent of the amount expended. If so, how can it be anything more or less than an investment in real estate such as the will authorized them to make? We can see no reason for supposing that it has diminished the general fund in their hands, although it may have changed the form in which a portion of it was invested. If it has had the effect to increase the income of the entire fund, (which is nowhere made to appear,) it is not at the expense of the inheritance, and gives the heirs at law no ground of complaint.

There seems to be no occasion to consider the question whether the negotiation with Kenrick had been carried so far in the lifetime of the testator as to constitute a contract that was binding upon his executors. If the reconstruction of the wharves was reasonable and judicious in itself, and constituted a proper investment of trust funds, the trustees had a right to cause the expense to be incurred, and the work to be done at the charge of the general fund in their hands. Additions and permanent improvements are properly so charged. *Watts* v. *Howard*, 7 Met. 478. And so would be the necessary expenses of putting the property into tenantable condition. *Parsons* v. *Winslow*, 16

Mass. 361. All this would come within their power, and per-haps their duty, as trustees. The expense of keeping the prop-erty in repair after such renovation would ordinarily be a charge upon the income.

The conclusion then is, that the legacy and succession taxes paid by the executors to the United States are to be charged to Mrs. Eldredge, and deducted from such of her income as may come to their hands; that all rents becoming payable since the death of the testator, where the last preceding quarter-day or other pay day occurred in his lifetime, are to be included with the income; and that all expenses incurred in the improve-ment and reconstruction of the wharves, and putting them into proper tenantable condition, are to be paid from the principal of the trust fund.          *Decree accordingly.*