WILLIAM S. DEXTER & another *vs.* JOHN C. PHILLIPS & others.

Suffolk.   March 24. — Oct. 21, 1875.   AMES & DEVENS, JJ., absent. March 23. — Oct. 19, 1876.

It is a general rule of the common law, followed in chancery, that sums of money, payable periodically at fixed times, are not apportionable during the intervening periods.

In the absence of express statute or agreement, no apportionment can be made between the days of payment, in rents of real estate; or in the interest on bonds of the United States, with or without coupons, and whether the principal is payable at a time fixed or at the option of the government, the option not having been exercised; or in the interest on bonds or certificates of a state, county, city, town or railroad corporation, not issued separately for the payment of specific debts, but usually bought and held by way of investment; or in the interest on a note of the receivers of a railroad, or on the certificate of a voluntary association, as a social club, if such note or certificate creates no personal or corporate liability, but is to be satisfied, at a future day, only out of a fund held upon a special trust, the terms of which are not shown to take it out of the general rule.

But interest upon promissory notes of individuals or of incorporated companies, such as are usually given for money lent, whether secured or not by mortgage or pledge, is apportionable between the days upon which it is stipulated to be paid.

BILL IN EQUITY, filed June 26, 1874, by the trustees under the will of William Phillips, alleging that the testator died April 8, 1873, and that by his will the residue of his estate was given to the plaintiffs in trust to pay the net income thereof, as often as semi-annually, to John C. Phillips, during his natural life, and upon his decease, if he should leave issue surviving him, to pay over, transfer and convey the principal or capital of the trust fund to and among his lawful issue; but if no lawful issue of John C. should be living at his decease, then to pay over the net income of the trust fund, as often as semi-annually, unto John Phillips, son of Thomas W. Phillips, during his natural life, and at his decease to pay over, transfer and convey the principal or capital unto the lawful issue of John Phillips; that John C. Phillips is living, unmarried, without issue; that John, son of Thomas, is living, married, and has four minor children; that on April 8, 1873, when the testator died, different portions of his real estate were occupied by tenants, some at will and some under leases, who paid rent by the quarter or month, and that the quarters or months had commenced, but were not terminated, on

April 8, 1873, and that the amount of rents which were accruing and had not then become payable was $8448.78; that by the terms of the leases rent was payable for each quarter or month during its term, and at that rate for fractions of a quarter or month, and that the lessor had the right under each lease to terminate it, in case of the destruction of the buildings on the leased premises by fire or any other unavoidable casualty, or if they were injured by such causes so as to be unfit for habitation ; and that the leases also contained the usual clause of entry and forfeiture in case of a breach of the conditions of the lease ; that on April 8, 1873, portions of the testator's personal property were invested in bonds and notes, and the interest on them was accruing and had not become payable, and that the amount of such interest was $25,925.65, and that some of these were bonds of the United States, issued under different statutes thereof ; that the executor under said will collected said rents and interest at about the times the same respectively became payable, and paid the same over to the trustees under said will ; that the plaintiffs held the same, and were in doubt whether said sums, or either of them, or any part thereof, after deducting proper commissions, should be paid over to said John C. Phillips, or added to the capital, and asked the instruction of the court thereon, and that the defendants might interplead and set forth their respective interests in said sums ; and for further relief.

The answers admitted all the allegations of the bill; John C. Phillips contending that the said several sums, as to which instructions were asked, after the deduction of all proper commissions, belonged to him as income ; and John Phillips, as well as Richard Olney, who had been appointed by the court guardian *ad litem* of the infant defendants, and next friend of all persons, not ascertained or not in being, who might be interested in said sums of money, or either of them, contending that said sums should be added to the capital of the fund.

Hearing on the bill and answers, before *Endicott*, J., who reserved the case for the consideration of the full court.

*C. A. Welch*, for John C. Phillips.

*F. C. Welch*, for John Phillips.

*R. Olney*, for the other defendants.

GRAY, C. J. It is a general rule of the common law, followed in chancery, that sums of money, payable periodically at fixed times, are not apportionable during the intervening periods.

It is accordingly well settled, both at law and in equity, except when otherwise provided by statute, that a contract for the payment of rent at the end of each quarter or month is not apportionable in respect of time. *Sohier* v. *Eldredge*, 103 Mass. 345. *Clun's case*, 10 Rep. 127 *a*, 128 *a*. *Jenner* v. *Morgan*, 1 P. Wms. 392. *In re Markby*, 4 Myl. & Cr. 484. *Browne* v. *Amyot*, 3 Hare, 173. *Beer* v. *Beer*, 12 C. B. 60. *In re Clulow*, 3 Kay & Johns. 689. The opposing decision on this point in *Foote, appellant*, 22 Pick. 299, appears to have been made without much consideration or reference to authorities, and is in effect overruled by *Sohier* v. *Eldredge, ubi supra.*

So dividends on shares in corporations or joint stock companies are not apportionable, unless expressly so directed by statute, or by the instrument under which the question arises. *Foote, appellant*, 22 Pick. 299. *Granger* v. *Bassett*, 98 Mass. 462. *Clive* v. *Clive*, Kay, 600. *In re Maxwell's trusts*, 1 Hem. & Mil. 610. Although the uncertainty whether the dividend will be declared on a particular day, and the impracticability of ascertaining how much of it has been earned at any earlier time, have been mentioned in some of the cases as reasons for this conclusion, they are not the principal grounds on which it rests; for the rule has been held equally applicable to cases where there was no such contingency.

Thus annuities, except where clearly intended for the daily support of the beneficiary, as in the case of a child or of the separate maintenance of a wife, are within the rule. *Wiggin* v. *Swett*, 6 Met. 194. *Hay* v. *Palmer*, 2 P. Wms. 501. *Reynish* v. *Martin*, 3 Atk. 330, 336. *Howell* v. *Hanforth*, 2 W. Bl. 1016. *Anderson* v. *Dwyer*, 1 Sch. & Lef. 301. *Franks* v. *Noble*, 12 Ves. 484. *The Queen* v. *Treasury Commissioners*, 16 Q. B. 357. *Leathley* v. *Trench*, 8 Irish Ch. 401.

The rule has always been held in England to apply to investments in the public funds. It was applied by Lord Hardwicke to the South Sea Annuities, even where the debt, by the terms of the settlement, had originally been secured upon a mortgage, the interest upon which would have been apportionable, and had

been transferred to government securities by order of the court; or where the money was directed to be laid out in land, and in the mean time to be invested in government securities, the interest and dividends to go in the same way that the rents and profits would, and the rents, if it had been actually invested in land, would have been apportionable under St. 11 Geo. II. *c.* 19, § 15. *Pearly* v. *Smith*, 3 Atk. 260. *Sherrard* v. *Sherrard*, 3 Atk. 502. *Wilson* v. *Harman*, 2 Ves. Sen. 672; *S. C.* Ambl. 279. And it has been uniformly applied to the three per cent. bank annuities or consols. *Rashleigh* v. *Master*, 3 Bro. Ch. 99. *Michell* v. *Michell*, 4 Beav. 549. *Campbell* v. *Campbell*, 7 Beav. 482. *In re Longworth's estate*, 1 Kay & Johns. 1. *O'Brien* v. *Fitzgerald*, 1 Irish Ch. 290. In each of those cases, the interest of the holder was a perpetual annuity, at a fixed rate of interest, subject to redemption by the government by payment of the principal sum upon which the interest was computed. St. 6 Geo. II. *c.* 28. *Trafford* v. *Boehm*, 3 Atk. 440, 444. *Kirby* v. *Potter*, 4 Ves. 748, 751. *Wildman* v. *Wildman*, 9 Ves. 174, 177.

So the half-yearly interest on a share in a loan of the East India Company, redeemable after a certain period at the option of the company, but of which the holder could not demand payment, was held by Vice-Chancellor Knight Bruce not to be apportionable between tenant for life and remainderman; although it had been taken as a substitute for a debt of the company, secured by its promissory note bearing interest; and although the stock certificate described the new loan as a debt, and, under the condition for redemption, the last payment might have to be for an apportioned part of the half-yearly interest. *Warden* v. *Ashburner*, 2 De G. & Sm. 366.

The same rule was applied by this court in *Sargent* v. *Sargent*, 103 Mass. 297, to coupons for interest on bonds of the United States; and upon reconsideration of the question, with the aid of the able argument for the remaindermen in the present case, we see no reason to doubt the correctness of that decision.

It is contended by the learned counsel that the interest on such bonds falls within the rule that interest on money is apportionable, though payable half-yearly or at other stated times.

That is doubtless the rule with regard to interest upon a debt, the principal of which is already due and payable, and in an ac-

tion upon which the creditor might recover interest for the detention of his money if no days of payment of interest had been fixed; and even if the debt is secured by bond or mortgage. *Foote, appellant*, 22 Pick. 299. *Edwards* v. *Warwick*, 2 P. Wms. 171, 176; *S. C.* 1 Bro. P. C. (2d ed.) 207. *Banner* v. *Lowe*, 13 Ves. 135. The reason for this was stated by Lord Hardwicke, in the cases already cited, to be "because there interest accrues every day for forbearance of the principal," and the "mortgagee may call in his money when he will." 3 Atk. 261. 2 Ves. Sen. 673.

The reason assigned in *Foote, appellant*, 22 Pick. 299, 305, that "the acquisition is uniform and certain, and capable of an exact apportionment for any definite periods of time, whether great or small," cannot be relied on; for the same reason would be equally applicable, and, as we have seen, was in that case erroneously applied to rents.

The cases, cited for the remaindermen, of *Johnston* v. *Moore*, 27 L. J. Ch. 453, and *Ibbotson* v. *Elam*, L. R. 1 Eq. 188, depended upon the terms of partnership agreements to pay interest upon the amount of capital contributed by each partner.

Only two other cases have been cited, in which the interest was apportioned, when the principal debt was not already due and payable.

The one is *Sweigart* v. *Frey*, 8 S. & R. 299, in which land, devised to a widow for life, with directions to executors to sell it at her death and divide the proceeds of sale equally among the testator's children, was sold by agreement of all parties in her lifetime, and the purchaser expressly agreed to pay the purchase money to the heirs at her death and to pay interest thereon annually to her during her life. The decision, in favor of the apportionment of the interest during the year in which she died, rests either on the express agreement of the parties, or on a somewhat doubtful analogy to the cases, already mentioned, of provisions for the support of children or for the separate maintenance of a wife. See *Wiggin* v. *Swett*, 6 Met. 194, and other cases above cited; *Gheen* v. *Osborn*, 17 S. & R. 171; *Tracy* v. *Strong*, 2 Conn. 659; *Manning* v. *Randolph*, 1 Southard, 144.

The other is *In re Rogers's trusts*, 1 Dr. & Sm. 338, in which Vice Chancellor Kindersley held that bonds or debentures issued by a railway company under authority of an act of Parliament,

with coupons for interest attached to the bonds and payable half-yearly to the bearer, were in the nature of a mortgage to secure a sum of money, and that the interest thereon was not an entirety, but an accumulation of each day's interest, which accrued *de die in diem*, and was therefore apportionable.

On the other hand, a court of like jurisdiction in Pennsylvania, after a careful review of the earlier English cases, held that not only interest on the debt of the United States, but also interest on the funded debt of a canal corporation, was not apportionable. *Earp's will*, 1 Parsons, 453, 467.

In this country, it is well settled, that bonds issued by a railroad corporation, payable to order or bearer, are negotiable instruments ; and that the coupons, attached to the bonds, and payable in like manner, may be severed from the bonds before the coupons become payable, and, after being severed, may be separately negotiated, the holder may maintain an action upon them at their maturity without producing or owning the bonds, the statute of limitations begins to run against such an action as soon as the coupons are payable, and the coupons are not affected by the cancellation or payment of the bonds to which they were originally attached, and are in legal effect equivalent to distinct bonds for the payment of the sums and at the times named therein. *Clark* v. *Iowa City*, 20 Wall. 583, and cases there cited. To hold a sum of money, which is substantially, and in so many aspects, a distinct debt payable at a fixed time, to accrue from day to day upon the principal sum named in the bond, and to be apportionable accordingly, would be going beyond any other precedent which has been brought to our notice.

The bonds of the United States are evidence of money borrowed by the government in no other sense than the English annuities. They are commonly bought and held by way of investment. The coupons are severable and negotiable separately. *Spooner* v. *Holmes*, 102 Mass. 503. *Vermilye* v. *Adams Express Co.* 21 Wall. 138. Neither the principal sum of the bond, nor the interest expressed in the coupon, is payable, or can be demanded by the holder, except at stated times fixed by the terms of the bonds themselves and of the acts of Congress under which they were issued. They appear to us to fall within the general

rule of law which does not allow the apportionment of such pay-ments, and not within the rule which governs interest on ordi-nary debts between individuals.

We have no such statute as the recent act of Parliament of 33 & 34 Vict. c. 35, enacting that all rents, annuities, dividends, or other periodical payments in the nature of income, " shall, like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of time accord ingly." Our Legislature has provided for the apportionment of " an annuity, or the use, rent, income or interest of any prop-erty, real or personal, or the income of any fund," only as be-tween those taking successive interests under a will ; and has not deemed it necessary, in order to secure the carrying out of a testator's intention, the accuracy of the inventory and appraisal of his property, or the just rights of his legatees, to provide that sums growing due at the time of his death should be apportioned between the capital and the income of his estate. Gen Sts. c. 97, §§ 23, 24. If in this or any other class of cases, not covered by statute, the existing rule of law should be found inequitable or inconvenient in its operation, it is for the Legisla-ture, not for the court, to change it.

The result is, that the whole of the rents of the real estate, and of the interest on bonds of the United States, which became payable after the death of the testator, is to be treated as in-come under his will. As to the other bonds and notes men-tioned in the bill, no facts are stated upon which an opinion can be formed, and no argument has been addressed to us.

*Decree accordingly.*

The bill was afterwards amended, by leave of court, by in-serting the following description of the bonds and notes referred to in the bill as originally filed :

" That said bonds and notes were, some of them bonds of the United States with coupons for interest ; some of them registered bonds of the United States without coupons ; some of them bonds of municipal corporations with coupons ; some of them bonds of different states of the United States with coupons ; some of them bonds of incorporated companies with coupons ; some of them registered bonds of incorporated companies with

coupons; some of them registered bonds of incorporated companies without coupons; the principal of all of the aforesaid bonds not having become due and payable at the death of the testator, except certain of the bonds of the United States, called five-twenties, which were made payable at the end of twenty years from their date, or at any time after five years from their date at the pleasure of the United States, and upon which the five years had elapsed, but no action had been taken by the United States at the death of the testator; some of them notes of individuals, secured by mortgage or collateral, or with sureties, and being without coupons, the principal of which was not due at the death of the testator; some of them notes of incorporated companies, without coupons, the principal of which was not due at the death of the testator; one note of an individual, without coupons, secured by mortgage, the principal of which was due at the death of the testator; an obligation of the Boston & Lowell Railroad Company, redeemable at a day after the testator's death, either in money or stock, at said company's option, with interest at four per cent. annually, on its nominal amount, but without coupons; and some bonds of the Somerset Club, so called, not a corporation or partnership, with coupons, secured by a trust deed of real estate, and not due at the testator's death, and upon which no individual or corporation was personally liable. Copies of each different kind of bond are annexed, with a coupon where there is one," and are described in the margin.*

---

* 1. A bond of the United States, issued under the U. S. St. of March 3, 1865, redeemable at the pleasure of the United States, after five years, and payable twenty years from July 1, 1867, with interest coupons at six per cent. payable semi-annually.

2. A bond of the United States, issued under the U. S. St. of June 30, 1864, redeemable at the pleasure of the United States, after October 31, 1869, and payable on November 1, 1884, with interest at six per cent. payable semi-annually.

3. A bond of the United States, issued under the U. S. St. of March 3, 1863, redeemable at the pleasure of the United States after five years, and payable twenty years from July 1, 1874, with interest at six per cent. payable semi-annually.

4. A bond of the United States, issued under the U. S. St. of March 3, 1863, redeemable after June 30, 1881, with interest at six per cent. payable semi-annually.

By agreement of parties the case was heard by *Colt*, J., on the amended bill and the answers previously filed, and was reserved for the consideration of the full court.

---

5. A bond of the United States, issued under the U. S. St. of March 3, 1864, redeemable after February 28, 1874, and payable on March 1, 1904, with interest at five per cent. payable semi-annually.

6. A bond of the Commonwealth of Massachusetts, issued under the St. of March 30, 1863, payable on July 1, 1883, with interest coupons attached, payable semi-annually.

7. A bond of the Commonwealth of Massachusetts, issued under the St. of May 14, 1864, payable on May 1, 1894, with interest coupons attached, payable semi-annually.

8. A bond of the County of Cook, State of Illinois, issued under the St. of February 15, 1865, payable May 1, 1885, with interest coupons attached, payable semi-annually.

9. A certificate of the city of Boston, issued under an order of the city council, passed July 14, 1862, payable on January 1, 1882, with interest warrants attached, payable semi-annually.

10. A certificate of the city of Cambridge, dated September 10, 1862, and payable September 10, 1882, with interest warrants attached, payable semi-annually.

11. A bond of the What Cheer Water Loan of the city of Providence, dated February 1, 1872, and payable on July 1, 1900, with interest warrants attached, payable semi-annually.

12. A bond of the city of Albany, dated July 1, 1841, and payable July 1, 1876, with interest coupons attached. payable semi-annually.

13. A water loan bond of the city of Chicago, issued in May 1867, and payable on July 1, 1892, with interest coupons attached, payable semi-annually.

14. A bond of the city of St. Louis, dated February 1, 1867, and payable twenty years after date, with interest coupons attached, payable semi-annually.

15. A mortgage bond of the Burlington and Missouri River Railroad Company, dated October 1, 1863, payable October 1, 1893, with interest coupons attached, payable semi-annually.

16. A mortgage bond of the Chicago, Burlington and Quincy Railroad Company, payable October 1, 1890, with interest coupons attached, payable semi-annually.

17. A mortgage bond of the Chicago, Clinton and Dubuque Railroad Company, dated June 1, 1871, and payable June 1, 1896, with interest coupons attached, payable semi-annually.

18. A mortgage bond of the Chicago, Dubuque and Minnesota Railroad Company, dated June 1, 1871, and payable on June 1, 1896, with interest coupons attached, payable semi-annually.

In March, 1876, the case was submitted on briefs by the same counsel.

---

19. A mortgage bond of the Cincinnati and Indiana Railroad Company, dated January 1, 1867, and payable January 1, 1877, with interest payable semi-annually.

20. A mortgage bond of the Illinois Grand Trunk Railway, dated October 1, 1870, payable October 1, 1890, with interest coupons attached, payable semi-annually.

21. A mortgage bond of the Missouri River, Fort Scott and Gulf Railroad Company, dated January 1, 1869, and payable January 1, 1899, with interest coupons attached, payable semi-annually.

22. A mortgage bond of the Omaha and South Western Railroad Company, dated June 1, 1871, payable June 1, 1896, with interest coupons attached, payable semi-annually.

23. A mortgage bond of the Ottawa, Oswego and Fox Valley Railroad Company, dated July 1, 1870, and payable on July 1, 1900, with interest coupons attached, payable semi-annually.

24. A mortgage bond of the Wisconsin Valley Railroad Company, dated March 1, 1873, and payable March 1, 1893, with interest coupons annexed.

25. A bond of the Burlington and Missouri River Railroad Company, dated July 1, 1870, and payable July 1, 1889, with interest coupons attached, payable semi-annually.

26. A bond of the Burlington and Missouri River Railroad Company in Nebraska, dated January 1, 1873, and payable January 1, 1883, with interest coupons attached, payable semi-annually.

27. A bond of the Old Colony and Newport Railway Company, dated August 1, 1867, and payable August 1, 1877, with interest coupons attached, payable semi-annually.

·28. A bond of the Philadelphia, Wilmington and Baltimore Railroad Company, dated April 1, 1867, and payable April 1, 1887, with interest semi-annually.

29. A bond of the Quincy and Warsaw Railroad Company, dated July 1, 1870, and payable July 1, 1890, with interest coupons attached, payable semi-annually.

30. " State of Vermont. $700,000 loan. — Specially authorized by the Court of Chancery, confirmed by an act of the legislature, and secured by pledge of engines, cars and income. Vermont Central and Vermont & Canada Railways. — $1000. No. 31. For value received, the undersigned, receivers and managers of the Vermont Central and Vermont & Canada Railways, promise, as such receivers and managers only, and out of the funds and securities specially devoted to that purpose, by the order and direction of the chancellor, under and by virtue of a decree, subsequently ratified and confirmed by special act of the legislature, a copy of which said act is contained on the back of this note, to pay to            or bearer, one thousand dollars, ten

GRAY, C. J. The brief now submitted for the remaindermen, since the bill has been amended by stating more particularly the nature of the various securities held by the plaintiffs, consists in great part of a reargument of the question which has been already fully considered and decided. But, owing to the practical importance of the subject, it has been taken under advisement by all the judges, including those who were not present at the former argument, and the opinion now announced is the unanimous judgment of the court.

Apportionment of interest on an ordinary debt is allowed, not because the interest is a sum certain, payable at a fixed time, and therefore easily apportionable; but upon the ground that it

---

years after date, with interest at the rate of eight per centum per annum, free of United States income tax, payable semi-annually, on presentation of this note at the office of the undersigned in Boston, Massachusetts. This note being one of a series, making a loan limited to seven hundred thousand dollars. St. Albans, Vt., November 1, 1865.

"Lawrence Brainerd.  ⎫ Receivers and Managers of
"Joseph Clark.  ⎬ Vermont Central and Ver-
"J. Gregory Smith.  ⎭ mont & Canada Railways."

31. "Somerset Club. $1000. This certifies that there is due to William Phillips, or his assigns, one thousand dollars, for so much money advanced by him towards the purchase of the estates numbered 42 and 43 Beacon Street, Boston, and to be paid with interest semi-annually, according to the interest warrants attached, at any time within twenty years from May 1st, 1871, at the pleasure of said Somerset Club, according to the provisions of an indenture of two parts, dated May 18th, A. D. 1871, made between Samuel Hooper and others of the first part, and the members of said club of the second part. This certificate being No. 174, of a series of two hundred certificates mentioned in said indenture, two of which are to be redeemed in each year. The said club, its members or officers, and said trustees, do not assume any personal responsibility for the payment of this certificate or warrants attached, but the holder is to look only to the property specified in said trust deed, and in conformity to the provisions thereof. Dated this eighteenth day of May, A. D. 1871.

"A. F. Heard, Treasurer.

"Countersigned,
"S. Hooper.
"J. Davis.
"F. O. Prince.
"Somerset Club."

"Interest Warrant. $35. Thirty-five dollars will be due and paid at the Somerset club house on this interest warrant, on the first day of May, 1891 according to the tenor of certificate No. 174. "A. F. Heard, Treasurer."

accrues from day to day for " delay of payment of what is due, or "for forbearance of the principal," which the creditor is entitled to recall at pleasure. The same rule has been extended to cases in which the debt is secured by bond or mortgage, because the bond or mortgage, although it fixes dates for the payment of the interest, is treated as a mere security for, not changing the nature of, the original obligation ; and, as the interest is held to accrue from day to day, it has been doubted whether, strictly speaking, it could be said to be a case of apportionment. Sir Joseph Jekyll, M. R., in *Hay* v. *Palmer*, 2 P. Wms. 501, 502 *ad fin.*, and Cox's note to p. 503. Lord Hardwicke, in *Pearly* v. *Smith*, 3 Atk. 260, 261, and in *Wilson* v. *Harman*, 2 Ves. Sen. 672, 673. 1 Swanst. 349, note. 2 Spence Eq. Jur. 578.

We are bound therefore by authority — whatever might be our opinion if it were an original question — to hold that the interest was apportionable, not only upon what is described in the bill as the "note of an individual, without coupons, secured by mortgage, the principal of which was due at the death of the testator," but also upon the "notes of individuals, secured by mortgage or collateral, or with sureties, and being without coupons, the principal of which was not due at the death of the testator ; " as well as upon the "notes of incorporated companies, without coupons, the principal of which was not due at the death of the testator," and which, not being otherwise described, we assume to be ordinary promissory notes, such as are usually given for money lent.

But the authorities cited in the former opinion show that, from a time anterior to the American Revolution, it has been clearly settled in England that in the case of investments in the public funds, on which interest was payable at stated periods, and the principal of which might be paid at any time at the option of the government, the general rule applied, and no apportionment could be allowed, except when provided for by statute.

Bonds of the United States, the principal of which is not yet payable, must be governed by the same rule. The government is not, and never was, under any obligation to pay either principal or interest, except at the times stipulated in the securities themselves. There is no possible construction or fiction of law, upon which interest can be said to accrue from day to day upon

a principal sum not yet payable, and which the payee has never had a right to demand. His rights, in this respect, are not affected by the question whether the obligation to pay interest is expressed in the principal bond, or in coupons annexed thereto. Nor can the nature or the unity of each instalment of income be affected by the fact whether the principal is to be paid absolutely at a time certain, or at the option of the government, or at that of the payee, the time not having elapsed, and the option not having been exercised. It follows that no apportionment of interest can be allowed upon any of the bonds of the United States, held by the plaintiffs, except those the principal of which was already due and payable at the time of the testator's death.

The bonds of a state must, of course, be governed by the same rule. And we are of opinion that no valid distinction can be made with regard to the bonds or certificates of counties, cities or towns, or of railroad corporations, copies of which are annexed to the amended bill. They are not like an ordinary promissory note or bond for money lent, which is already due and payable, and of which the debtor has obtained an extension of the time of payment. They are not issued separately for the payment of specific debts, but are commonly purchased and held by way of investment. They are not evidence of any debt whatever from the corporation to the holder, except that arising at the very time of the issue of the bonds, and payable only at the times specified therein.

The so-called note of the receivers and managers of certain railroads in Vermont, and the certificate issued by the Somerset Club, each of which creates no personal or corporate liability, but is to be satisfied, at a future day, only out of a fund held under a special trust, the terms of which have not been made known to us, must, in the absence of any facts to show the contrary, fall within the general rule, and be held not to be subject to apportionment.                *Decree accordingly.*