## Thompson's Estate.

*Trusts and trustees—Life-tenant and remainderman—Apportionment of dividends—Fiduciaries Act of June 7, 1917.*

1. Under section 22 of the Fiduciaries Act of June 7, 1917, P. L. 447, dividends on stock held in trust for one for life with remainders over are to be considered as accruing from day to day and are to be apportioned between the personal representatives of the deceased life-tenant and the remaindermen.

2. This section merely expresses the legislative intent to do the same justice as between life-tenant and remainderman with respect to ordinary and current dividends, as the rule in Earp's Appeal, 28 Pa. 368, effects in the case of extraordinary dividends.

Audit of account. O. C. Phila. Co., Oct. T., 1911, No. 215.

*Carlyle H. Ross*, for accountants.

*J. B. Colahan*, for Fidelity Trust Company and Howard G. Mitchell, executors of Lewis A. Thompson, Jr., deceased, life-tenant.

*Robert J. Boltz*, for Mary Harris Thompson, a life-tenant.

GEST, J., April 9, 1925.—Blanche H. Thompson died on May 27, 1910, leaving a will, by which she devised and bequeathed her residuary estate, real and personal, to Wharton E. Harris and the Guarantee Trust and Safe Deposit Company in trust to divide the same into two equal parts or shares, and, as to one of them, she directed the net income to be paid to her son, Lewis A. Thompson, for the full term of his natural life, for his use and support. From the principal of her remaining share she gave $10,000 to her daughter, Mary Harris Thompson, $5000 thereof when she attains the age of twenty-one years, and the remaining $5000 to be paid to her when she attains the age of twenty-five years, the whole of the income of the remaining half part of her residuary estate to be paid into her hands for her use and maintenance for the full term of her natural life. She further provided that should either of her children die leaving lawful issue him or her surviving, the share or portion of said income which said child would have received should be paid by her trustee to the issue of said deceased child, such issue taking *per stirpes* and not *per capita*, and in the event of either of her children dying leaving no lawful issue him or her surviving, then she directed her trustees to pay the whole of the income of her residuary estate to the survivor or the issue of the survivor. In the event of the death of both of her children leaving issue him, her or them surviving, she directed that the whole principal and income of the residuary estate should be paid over and divided between such issue, share and share alike, *per capita* and not *per stirpes*, and should both of her children die leaving no lawful issue him, her or them surviving, she directed

her trustees to pay the principal of the estate to the children of her brother and sisters, share and share alike, *per capita* and not *per stirpes.*

Lewis A. Thompson died unmarried and without issue Oct. 11, 1923, so that the estate remains in trust for Mary Harris Thompson, now Mitchell, who, it appears from the account, has received the $10,000 bequeathed to her as above stated. By adjudication filed Nov. 7, 1923, by Lamorelle, P. J., the balance shown by the account in the Lewis A. Thompson trust was awarded to the trustees as part of the continuing trust for Mary Harris Thompson Mitchell under the terms of the will aforesaid, and the income accrued to the date of the decease of Lewis A. Thompson was awarded to his personal representatives, the Fidelity Trust Company and Howard G. Mitchell. Subsequently, a dispute arose between the trustees and the personal representatives of Lewis A. Thompson, the latter claiming that they were entitled to an apportionment of certain dividends from stocks forming a part of the *corpus* of the fund, of which, during his lifetime, the said Lewis A. Thompson had received the income, and, accordingly, this account has been filed by the trustees under the will of Blanche Harris Thompson, deceased, in order that the question of the right of the personal representative of Lewis A. Thompson to an apportionment of the dividends might be determined by the courts.

Lewis A. Thompson died, as stated, Oct. 11, 1923, and since that time numerous dividends were received by the trustees on sundry corporate stocks held in trust, which are enumerated in the schedule hereto annexed. This schedule gives the dates of payment of these dividends, their amounts and a calculation of the apportionment thereof in each case from the last previous semi-annual or quarterly dividend dates, occurring before the death of Lewis A. Thompson, up to Oct. 11, 1923, the date of his death. Thus, for example, on Nov. 30, 1923, the trustees received a 6 per cent. quarterly dividend on fifty-seven shares of Pennsylvania Railroad stock, amounting to $42.75, and this is apportioned from Aug. 31, 1923, the date of the last previous dividend, up to Oct. 11, 1923, the proportionate amount or share being ascertained to be $19.47.

A similar calculation is made of the other dividends, and the aggregate amount is ascertained to be $131.88.

The general principle of the common law, adopted also by the courts of chancery, is that periodical payments of sums of money are not apportionable between successive owners or beneficiaries when the right to receive them changes; that is, the person entitled at the date of the payment is entitled to the whole of it. Thus, in the case of rents of real estate, the owner or life-tenant, at the time the rent period ended, was entitled to the whole of the rent then due. If, for example, a life-tenant died only one day before a quarter's rent became due, his estate could get none of it: Howes on Income and Principal, 70; Dexter *v.* Phillips, 121 Mass. 178. So annuities were not apportionable, nor any fixed sum of money granted or bequeathed payable at regular periods, nor regular dividends on stock of corporations based on current income. The only exceptions, it would appear, were in case of annuities for the support of wife or child, as in Gheen *v.* Osborn, 17 S. & R. 171, and interest on debts, which is considered as accruing from day to day.

That this rule in many cases led to hardship became quite apparent, and it has accordingly been modified in many jurisdictions, including Pennsylvania, by statutes and decisions, as may be seen by reference to MacIlwain's Estate, 20 Dist. R. 1073, where the subject is discussed at some length. In addition to what was there said, it may be remarked that the hardship of the common law rule was so apparent in the case of what are known as extraordinary divi-

dends of profits accumulated through a considerable period of time, that they have been uniformly held to be apportionable under the rule stated in Earp's Appeal, 28 Pa. 368. The general rule, however, continued to be rigidly applied in cases of so-called regular or current dividends, such as MacIlwain's Estate, 20 Dist. R. 1073, in connection with which reference may be made to McKeen's Appeal, 42 Pa. 479, and Stewart v. Swaim, 7 W. N. C. 407, in which case Thayer, P. J., suggested that if the law as it stood seemed harsh or illiberal, the remedy lay with the legislature.

The executors of Lewis A. Thompson base their claim for apportionment of the dividends above mentioned upon section 22 of the Fiduciaries Act of June 7, 1917, P. L. 447, which reads as follows: "All annuities and all payments of rents, income, interest or dividends of any real or personal property, directed by any will to be made during the lifetime of the beneficiary, or for the life or lives of another person or persons, or for a term of years, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportioned to the date of the death of such beneficiary of or such cestui que vie, or to the end of such term of years."

In their notes to this section the commissioners refer to the remarks of Thayer, P. J., in Stewart v. Swaim, as having suggested this change in the law, and if the act be taken literally to mean what it says, I cannot doubt that the legislature intended this section to apply to cases like the present.

Its application, however, was strenuously opposed by the learned counsel for the trustees.

The first objection is based on the fact that section 22 of the Fiduciaries Act does not provide, as does the English Act, 33 and 34 Vict., ch. 35, on which it was to some extent modeled, where it is provided, in section 3: "The apportioned part of any such rent, annuity or dividend or other payment shall be payable or recoverable, in the case of a continuing rent, annuity or other such payment, when the entire portion of which such apportioned part shall form part shall become due and payable, and not before."

This objection, however, is without force. In the present case, the lifetenant died in October, 1923, and all the current dividends in which his estate claims, or could claim, any share have long since been paid, the latest one over a year ago. The clause above mentioned in the English Act was evidently inserted ex majori cautela, and was strictly unnecessary. Under our act, it is obvious enough that no court would ever compel a fiduciary to pay over moneys which he had not actually received and before the time when payment might be expected. And it may be remarked that the objections here made that dividends may never be declared or received would apply to the cases of rents or indeed the interest on bonds, for default may be made in such cases and, unfortunately, frequently occurs.

The learned counsel for the trustees argues, further, that the change in the law effected by section 22 would in some cases lead to practical difficulties in the administration and settlement of trust estates, especially in connection with the sale of stocks for distribution after the termination of a trust, and he refers to the uncertainty that may occur in the preparation of inventories of the estates of deceased life-tenants or in the settlement of inheritance taxes, to which I need not advert further than to say that they certainly do not arise in the present case, and any discussion of them would be purely academic. I may remark, however, that the rule in Earp's Appeal as to the apportionment of extraordinary dividends, which is applied in countless cases in this court every month, often gives rise to questions of the greatest complexity and difficulty, and, confessedly, in many instances the court can only

### Thompson's Estate.

approximate an accurately just apportionment. The fact that it greatly complicates the administration of trust estates is no reason why the rule should not be followed as well as it may be, and this section 22 is merely expressive of the legislative intent to do the same justice as between life-tenant and remainderman with respect to ordinary and current dividends, as the rule in Earp's Estate effects in the case of extraordinary dividends.

The claim is, therefore, allowed.

| | |
|---|---|
| The balance of principal of personal estate is | $97,730.08 |
| And proceeds of real estate | 2,000.00 |
| Making | $99,730.08 |
| Deduct distribution according to the will to Mary H. Thompson | 10,000.00 |
| Leaving | $89,730.08 |

which is awarded to Wharton E. Harris and the Guarantee Trust and Safe Deposit Company, trustees for Mary Harris Thompson Mitchell.

| | |
|---|---|
| The balance of income is | $1,402.02 |
| From which there is awarded to the Fidelity Trust Company and Howard G. Mitchell, executors of Lewis A. Thompson | 131.88 |
| Leaving | $1,270.15 |

which is awarded to Mary Harris Thompson Mitchell.

And now, April 9, 1925, the account is confirmed *nisi*.

No exceptions were filed and the adjudication was confirmed absolutely according to the rules.