NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
September, 1881.

## ROOSEVELT v. ROOSEVELT.*

*In the matter of the final accounting of* JAMES A.
ROOSEVELT, *sole surviving executor, etc.; of* JAMES I.
ROOSEVELT, *deceased.*

The testator, at his death, owned a judgment of foreclosure, for more than
$8,000, and a mortgage, on which $5,700 was due. On a sale, under
the judgment, the executor bid in the premises, and afterw::ds sold
them for $7,500, and, on foreclosure of the mortgage, he received, as
net proceeds of sale, $6,100. Upon a question between life-tenant and
remainder-man, interested under the will in these funds, as to the
proper apportionment, and the rate of interest to be employed in the
calculation,—*Held,*

1. That, in the absence of any rule in this country as to interest rate, five
per cent. should be adopted, in analogy to the English rule of three
per cent.
2. That a principal sum, which, with interest from the testator's death to
date of realization, would produce the amount realized, should be car-
ried to capital account, and the residue to income.

MOTION to confirm referee's report on final accounting
of executor ; opposed by Charles Y. Roosevelt, a son of,
testator, and a tenant for life under his will.

The contestant's exceptions raised the questions upon
what principle certain amounts, received by the executor
upon two of the securities held by him, should be ap-
portioned as between a life tenant and remainder-man,
or the capital and income of the estate ; and on what rate
of interest the calculation should be based.

One of the assets referred to was a judgment of fore-
closure and sale, known as the Tilton judgment, on which

---

* See Scovel v. Roosevelt, *ante*, p. 121.

there was due the testator, at the time of his death, April 5, 1875, the sum of $8,595.22.   On foreclosure, the executor bid in the premises, and subsequently, on March 19, 1878, sold them, realizing a net amount of $7,530.15, which he carried to the account of principal, the life tenants receiving no income until the receipt of the proceeds of the sale,—nearly three years. . The other asset was the bond and mortgage of one Juliana Gardner, on which there was due, at the testator's death, $5,711.66.   On foreclosure, the executor received, on February 20, 1878, as net proceeds, the sum of $6,147.91, of which $5,711.66, being the amount due thereon at testator's death, was carried to capital account, and $436.25, the surplus over the amount then due, to income account.

The referee reported that the amounts so received should be apportioned, as between capital and income, according to the following rule:   " A principal sum is to be ascertained by computation, which would produce, with interest at the rate of five per cent., from the death of the testator, down to the time the proceeds were actually received, the amount so received, and such principal sum is to be carried to capital account, and the residue, being the five per cent. interest, to the account of income ;"   that, as to the Tilton judgment, according to such apportionment, of the said sum of $7,530.15, there should be carried to capital account the sum of $6,560.68, and to account of income $969.47 ; and that, as to the Gardner mortgage, of the said sum of $6,147.91 there should be carried to capital account the sum of $5,375.22, and to the account of income the sum of $772.69.  ·

To this rule, and said rate of interest, the contestant excepted, claiming that, as to the rate of interest, the ref-

eree should have adopted seven per cent. to January 1, 1880, and six per cent. from that date to the date of accounting.

DE WIT, LOCKMAN & KIP, *for executor.*

KURZMAN & YEAMAN, *for exceptant.*

THE SURROGATE.—The natural first impression, in considering this case, was to ascertain the amount of loss of principal and of interest, by a computation of interest upon the amount due to the decedent at his death upon the respective obligations referred to, deduct the amount realized from the principal and interest thus computed, and charge to the respective beneficiaries the amount of the loss, in proportion to their interests, respectively, so ascertained.    But a moment's reflection showed that that was an erroneous basis, for the reason that the amount due at the death was not realized, and therefore was not a proper statement of the remainder-man's interest.    Hence, it becomes necessary to adopt some rule, by which it can be ascertained what the equitable proportion of the loss sustained is.    The rule in England, stated in Cox *v.* Cox (*L. R.*, 8 *Eq. Cas.*, 343), and adopted by the referee, which rule, it is supposed, was evolved from the necessity of the case, seems to be the only one by which to approximate the relative liability of the life tenant and remainder-man, to sustain the loss.    In that case, the vice-chancellor computed the interest, in ascertaining the principal, at four per cent., the current rate in England then being five per cent.

The only other question which seems necessary to be discussed is, what should be the rate of interest computation, in the effort to ascertain the remainder-man's inter-

est in the fund realized. The rule adopted in Williamson v. Williamson (6 *Paige*, 298), was to make the computation at five per cent., in analogy to the rule in England of three per cent., in cases between legatees for life and remainder-men, so as to apportion the capital and income between them, although the reason for this reduction is not stated. It is supposed to be based upon the fact that suitable investments cannot be always promptly made, at the highest legal rate of interest, and that it would be unjust to the remainder-man to adopt the highest rate in such computation. In the absence of any rule upon the subject in this country, and respecting the authority of the English vice-chancellor, and the experience and learning of the referee, and regarding the rule adopted as consonant with the principles of equity, I am of the opinion that the report of the referee should be confirmed and the exceptions overruled.

Ordered accordingly.