JOHN W. VEAZIE, in equity, *vs.* ANNIE V. FORSAITH and others.

Penobscot.    Opinion May 22, 1884.

*Contract.  Deed.  Construction.  Principal and income.  Trusts.*

When the words of a written instrument are of doubtful import or susceptible of different interpretations, the circumstances under which the instrument was made, and the object to be obtained, may be considered by the court to enable it the better to ascertain the real intention of the parties from the language used.  But when the language is free from doubt, it must govern, and cannot be construed by outside circumstances.  It is the duty of the court to construe the contract between parties, but it cannot make a new one for them.

In the principles of interpretation, applicable to wills, the object is to ascer-

tain the intention of the testator alone. But in the case of a deed, not only the intention of the grantor is to be ascertained, but the understanding of the grantees, as well, or perhaps more accurately what they should reasonably have understood from the language used.

A trust deed provided that the trustees were "to keep and maintain the principal of said trust estates safely invested according to their best judgment, and from the income thereof to pay me the sum of five thousand dollars ($5000) each year during my natural life." *Held:* The principles of interpretation, applicable to cases of this kind, leave no doubt that the annuity is to be derived from income alone.

Interest due on notes accrues from day to day, and when to be appropriated to income, may be apportioned, and unlike an annuity or dividend, which can be credited to income when payable, it is, when received, to be credited to income for the time during which it accrued.

A part of a trust estate, created by a trust deed, consisted of notes due from an estate which was insolvent. Without going through a process of insolvency, after paying other debts against the estate in full, the remainder of the property, by the agreement of all the parties interested, was appropriated to the payment of these notes, and in consideration thereof the notes, both principal and interest, were discharged, though not paid in full. *Held:* the loss is to be borne *pro rata* by the principal and interest, and the interest less the loss thus ascertained, is to be credited to the income for the years in which it was earned and the remainder to the principal, except that portion of the interest earned before the date of the trust deed, which is to be credited to the principal.

Where the rent of mill property, held by trustees, is paid in repairs, it may be properly omitted from their account. It is not chargeable to them either as principal or income.

Temporary repairs of trust property are chargeable to the income and not to principal.

Where a trust deed requires the trustees to care for, manage, and keep the trust property according to their "best judgment," it is their discretion which the grantor confided in and not that of the court. If not exercised in good faith the court may interfere, but not otherwise. It is for the trustees to decide whether repairs shall be temporary or permanent.

BILL IN EQUITY.

Heard on bill, answer and proofs.

One question presented in the case involved the construction of a deed of trust which is thus set forth in the bill:

" Complainant says that on or about the twenty-seventh day of February, A. D. 1879, by his deed then executed, acknowledged and delivered and since recorded, he conveyed for the reasons and purposes hereinbefore and in said deed given to his said children upon the trusts therein expressed and implied, all the

rest and residue of his property, real and personal, which property is briefly described in said deed and included his son's said notes, so far as unpaid, and the mortgages securing them, and the unpaid notes of Gilman, Webster, Quimby and Weed, and their said mortgage to complainant. Said deed of trust is in substance, as follows:

"I, John W. Veazie, of Bangor, in the county of Penobscot and State of Maine, having fully determined to retire from active participation in business, in order, whilst leaving for myself independent support during life, also to express my affection for and confidence in my two children, Alfred Veazie, of Bar Harbor, in the county of Hancock, and State of Maine, and Annie Veazie Forsaith, wife of William J. Forsaith, of Boston, in the county of Suffolk, and Commonwealth of Massachusetts; and in consideration of one dollar to me in hand, paid by the said Alfred Veazie and Annie Veazie Forsaith, the receipt of which is hereby acknowledged, have sold, assigned, transferred and set over, and do hereby, sell, assign, transfer and set over unto the said Alfred Veazie and Annie Veazie Forsaith, certain property and interests in property, both real, personal and mixed, as follows, namely:

" Seventeen (17) promissory notes signed by Alfred Veazie payable to my order, all dated May 6, 1869; nine (9) of them being for the sum of eight thousand dollars ($8000) each, payable in 2, 3, 4, 5, 6, 7, 8, 9 and 10 years, respectively, from date thereof with interest annually. The one payable in three years from date thereof, bearing an indorsement January 1, 1871, of $6712.51. Eight (8) of said notes being for the sum of seven thousand dollars ($7,000) each, payable on the sixth day of November, in the years 1871, 1872, 1873, 1874, 1875, 1876, 1877 and 1878, respectively, at the Veazie Bank of Bangor, with interest annually.

" Also the mortgage securing the nine of said notes first named, dated May 6, 1869, and recorded in registries of deeds as follows: Penobscot, volume 395, page 398; Hancock, volume 135, page 433; Piscataquis, book 57, page 279; together with all my interest in the mortgaged premises.

" Also a personal mortgage of bank and railway shares, securing the eight of the notes last above named, dated May 6, 1869, not recorded, and all my interest in the mortgaged property.

"Also a promissory note of the said Alfred Veazie for $6250. dated May 21, 1874, payable on demand with interest at seven per cent per annum.

" Also six (6) promissory notes for the sum of nine thousand dollars ($9000) each, dated January 23, 1871, signed by Samuel B. Gilman, James Webster, Edward L. Quimby, and Wyatt Weed, payable to my own order with interest annually, in 5, 6, 7, 8, 9 and 10 years, respectively, from date thereof; also the mortgage securing said notes, and of even date with them, recorded in Penobscot registry of deeds, volume 408, page 167, and all my interests in the mortgaged premises.

" To have and to hold to them, the said Alfred Veazie and Annie Veazie Forsaith, and the survivor of them, and his or her heirs or assigns, in trust, for the following uses and purposes, and upon the special confidence and trust following, that is to say :   To keep and maintain the principal of said trust estates safely invested according to their best judgment, and from the income thereof, to pay to me the sum of five thousand dollars ($5000) each year during my natural life, provided the same is called for by me, and payable from time to time as called for.

" 2d. From the annual income remaining after the above payment is made to me, to pay to Annie Veazie Forsaith the sum of two thousand dollars ($2000) annually, during my life, payable to her in quarterly installments of ($500) five hundred dollars, on each of the first days of January, April, July, and October of each year during my life.

"3d. From the annual income of said trust estate remaining after the annuity to myself and the one provided to be paid to Annie Veazie Forsaith, to pay to Alfred Veazie the income of said estate up to the sum of two thousand dollars ($2000) per annum, and what remains of said income, if anything, to pay and divide equally between the said Alfred Veazie and Annie Veazie Forsaith, during my life.   Furthermore, there is imposed upon said trustees the support and tender care of Miss Ann M. Bartlett,

the sister of my late lamented wife, that they in conjunction with myself, shall support her in the style of living to which she has long been accustomed in my family, and that she reside in my late homestead which I have this day conveyed by deed to the said Alfred and Annie Veazie.

"Finally to provide from the income of the trust property or otherwise, within two years from my decease, the sum of ten thousand dollars ($10,000) which shall be subject to my appointment and distribution if I so choose, by will or other written instrument, and after the execution of all the trusts herein created, that they, the said Alfred Veazie and Annie Veazie Forsaith, should have and hold said property the subject of this trust in whatsoever form it may be, and wherever situated, as their absolute property discharged of said trust. To them and their heirs and assigns in fee simple forever, share and share alike, and be entitled at once to the possession of the real and personal property constituting said trust estate.

"In case of the death of either or both of my children before the termination of this trust, their respective heirs succeed in right of inheritance by representation.

"The above is under date of February 22, A. D. 1879.

"And under date of February 27, 1879, is added the following in substance:

"Before the final delivery of the deed and declaration of trust contained on the foregoing four pages, I make the following modifications therein to wit:

"1st. Either of my children, the said Alfred and Annie V. may dispose by will of their interest in the estate embraced in the trust.

"2d. In case of the decease of the said Annie V. Forsaith, before my decease, and consequently within the period of the continuance of the trust, I appoint William J. Forsaith, her husband, to be co-trustee in her place and stead, and direct Alfred Veazie, trustee, to make conveyances and releases, to make said substitution or filling of vacancy effectual, and in case of the death of the said Alfred, during the continuance of the trust, then his wife, Etta Hodsdon Veazie, or whomsoever else he, the

said Alfred, may by will or other proper instrument appoint, is appointed co-trustee in his place and stead, and the surviving trustee is to make conveyances accordingly.

"3d. The setting apart of ten thousand dollars within two years from my decease, is made conditional and contingent upon the existence of a will or other written instrument disposing of it.

" 4th. Full authority is given to the trustees to manage the trust in every respect, without recourse to any court for authority, for execution of deeds or otherwise.

" And the said Alfred Veazie and Annie V. Forsaith then and there accepted said trust, under their hand and seal, and entered upon the performance of its duties."

The other questions are stated in the opinion as well as the facts relating to them.

*J. Hutchings,* for the plaintiff.

Complainant claims that he is entitled under the trust deed to his five thousand dollars a year, upon call, income or no income.

If complainant were claiming under a will, with provisions as to his five thousand dollars a year, like those in the trust deed, he would have what the books call a demonstrative legacy.

The deed begins with expressing complainant's purpose and intention in making the conveyance of saving for himself "independent support during life."

The five thousand dollars a year is charged upon the whole estate, and not upon any part of it. If the income is not sufficient, the principal must make good the deficiency.

In support of this claim we rely upon many decided cases, especially upon the cases of *Pierrpont* v. *Edwards,* 25 N. Y. 128 ; and *Smith* v. *Fellows,* 131 Mass. 20. See also *Colville* v. *Middleton,* 3 Bevan, 570 (43 Eng. Ch. Rep. 569) ; *Phillips* v. *Gutteredge,* 3 DeGex, Jones and Smith, 332 (68 Eng. Ch. Rep. 331) (1862) ; *Pearson* v. *Helliwell,* Law Rep. Eq. 411 (1870) ; *Boyd* v. *Buckle,* 10 Simons, 595 (16 Eng. Ch. Rep.) (1840) ; *Arundell* v. *Arundell,* 1 Mylne & Keene, 316 (7 condensed Eng. Ch. Rep.) ; *Newton* v. *Stanley,* 28 N. Y. 61.

That in the case at bar, it is a deed instead of a will, under which complainant claims, should make no difference in its construction. There is the same reason for so construing the deed, that Mr. Veazie may have his five thousand dollars a year, income or no income, as if it were a will instead of a deed.

*Wilson and Woodward*, for the defendants, cited: *Grant* v. *Black*, 53 Maine, 373; *Morse* v. *Marshall*, 13 Allen, 288; *Sanborn* v. *Clough*, 40 N. H. 316; Hill on Trustees, Part 2, c. 2, Art. 2; 2 Williams, Ex'rs (6 Am. ed.) 1360–1; *Smith* v. *Fellows*, 131 Mass. 20; *Stewart* v. *Chambers*, 2 Sandf. Ch. 382; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Baker* v. *Baker*, 7 DeG. McN. & G. (56 Eng. Ch. R. 691); S. C. 6 H. L. Rep. 616; *Stetfox* v. *Sugden*, Johnson's Ch. Cas. 234; *Mitchell* v. *Wilton*, 23 Weekly Rep. 789. Note 2 White & Tudor's Lead. Cas. 616; *Foster* v. *Smith*, 1 Phillips, 629; 1 Perry on Trusts, 350; Hill on Trustees, * 192; *Nichols* v. *Eaton*, 91 U. S. 716; *Wood* v. *Pennell*, 51 Maine, 52; *Chase* v. *Deming*, 42 N. H. 274; 3 Redf. Wills. (Ed. of 1877) 433: *In Re Grabowski's settlement*, L. R. 6 Eq. 12; *Cox* v. *Cox*, L. R. 8 Eq. 343; *Maclaren* v. *Stainton*, L. R. 11 Eq. 382; *Parsons* v. *Winslow*, 16 Mass. 361; *Watts* v. *Howard*, 7 Met. 478; *Sohier* v. *Eldredge*, 103 Mass. 345; *Amory* v. *Lowell*, 104 Mass. 265.

DANFORTH, J. February 27, 1879, the complainant conveyed in trust to his son and daughter the most of his property. At, or about, the same time he conveyed to the same grantees the remainder of his property absolutely. Soon after these conveyances the son died, and by a provision in the trust deed his widow became his successor in the trust. This trust deed is the foundation of the present suit, and out of it arise several questions which are presented for decision by the bill, answers and proof.

What is the proper construction of that part of the deed which provides for the annuity to be paid to the plaintiff and grantor? Is it a charge upon the income only, or if there is a deficiency in that, shall such deficiency be paid out of the principal? The plaintiff claims that the latter is the true construction while the respondents contend for the former.

To sustain the plaintiff's view much reliance is placed upon the undisputed fact that the deeds included all his property and left him without any means of support, except such as was provided in the trust deed.

It is undoubtedly true that when the words of a written instrument are of doubtful import, or susceptible of different constructions, the circumstances under which it was made, and the object to be obtained may be proved to enable the court more intelligently to ascertain from the language used the meaning of the parties. But when the language is free from doubt, and leaves no uncertainty as to the meaning of the parties, it must govern and cannot be controlled by any outside circumstances, whatever may be the equities growing out of them. In this case there is no doubt as to the meaning and proper construction of the deed which can, to any extent, be removed by the fact referred to. Were there any doubt whether the plaintiff intended to provide himself with an annuity, this fact might be of service in settling that question. But there is none. The language upon this point is so clear as to leave no question as to the provision, or the amount of it. The difficulty seems to be that as the respondents view it, the provision made does not accomplish the desired end. If the plaintiff's expectations in this respect have been disappointed, if his sagacity or judgment have failed him and his estimates were too large, without any fault on the part of the respondents, it is a misfortune which the court cannot remedy; it cannot affect the construction of the deed. By well settled law the court may and must interpret a contract when the parties disagree, but it cannot make a new one to correct any errors of judgment into which one, or the other of the parties may have fallen. This deed must be interpreted by the light obtained from its own language alone.

The principles of interpretation, by which this plaintiff seeks to maintain his construction of this deed, are those applicable to wills, and the cases cited are those in which the meaning of a testator comes in question. But the two cases are entirely different, and the rules of construction depend upon different facts and different principles. While in construing a will the

relative rights of the different legatees are to be settled, yet the governing power is the intention of the testator alone. His is the property given, he can do with it as seemeth to him right. The legatees are but the objects of his bounty, and must submit to that which has been provided for them. Hence in a will the great purpose is to ascertain the meaning of the testator only. A deed is a contract, and in construing it we are to ascertain the meaning or the understanding of both parties to it. True, in this case the property was that of the plaintiff, and he had the right to make such a disposition of it as he chose. In the conveyance he had a right to impose such conditions as he saw fit. But having imposed them it was optional with the grantees to accept or reject the whole deed. The acceptance of this deed necessarily involved the assumption of the duties and obligations imposed by the conditions. They obtained a title to the property for a consideration which, in this case even, may in the end prove to be equal to the full value of the property conveyed. But whether so or not it is sufficient to require the court to ascertain from the language used, how the grantees understood, or ought to have understood the provisions of the deed; or what they were getting as well as the obligations assumed. Besides the words imposing the obligation to pay, are the words of the plaintiff, selected by him to secure a benefit to himself, as well as to impose an obligation upon others. If, therefore, their meaning is uncertain there is no reason why the ordinary rules applied in such cases, should not be applied here and the meaning taken more strongly against the grantor.

Still, notwithstanding the difference in the instruments to be construed, the cases cited by counsel may, render some aid, though as Lord BROUGHAM says in *Baker* v. *Baker*, 6 H. L. Cases 626–7 : "It has been very justly observed, in regard to cases like this, where the sole question that arises is upon the construction of a will, and where the object is to ascertain the meaning of the words used by the testator, that nothing, generally speaking, can be more unfruitful than a reference to other cases where, instead of the question arising upon a principle of law, or a rule of law, the whole question arose upon the

meaning of the words used in the will; and the least difference between the case at bar and the case cited, will make all the difference in the world, and render the case cited utterly useless."

It is unnecessary to examine all the cases which have a bearing upon this question, for there is a remarkable unanimity in them, and no real inconsistency in those cited, or which might be cited upon the one side or the other. So far as cited they relate to the construction of wills, and as Lord BROUGHAM says, " present no question arising upon any principle of law, but upon the meaning of the words used," that being the only thing to be ascertained.

The only question involved in these cases, in which we are now interested is, when a legacy or annuity is given with directions that it be paid from income or a particular fund, by what rules of construction shall we ascertain whether the testator intended that such legacy should be a specific or a general one; whether the direction for the payment is demonstrative, or is the legacy to fail if the fund from which it is to be paid fails. All the cases hold that whether the legacy be the one or the other, must depend alone upon the intention of the testator as gathered from all the words used which may throw any light upon such intention.

The case of *Smith* v. *Fellows*, 131 Mass. 20, is probably as favorable to the plaintiff as any which has been, or can be cited. In this case the testator, after giving certain legacies to his wife, in addition gave her an annuity of " one thousand dollars per year during her lifetime, the same to be paid from the income of my property." This annuity was held to be a demonstrative legacy, and upon the failure of the income, payable out of the principal of the estate. This was upon the ground that it was the intention of the testator that his wife should be thus provided for, " that is, it was the gift of a fixed sum, which is to be paid annually, and is not made contingent or dependent upon the income of any specific portion of his estate," and that " the residue which was bequeathed to the daughter was described as that which remains after the payment of the debts and expenses, and the payment of the *legacies* mentioned in the will." Here were two legacies,

one to the wife, payable out of the income of the estate, the other to the daughter of that part of the same estate, "which remains after the payment of the legacies." Thus the legacy to the daughter, though diminished by the payment to the wife out of the principal, is not interfered with as given. It stands in the precise terms of the will, and is received as provided. The expressed intention of the testator is carried out in regard to both legacies. The decisive test seems to be, in this and other cases of the same class, that the capital from which the income is derived is bequeathed, not as a specific bequest, but as a residue after the payment of the annuity.

This principle, and the authorities sustaining it, are quite fully discussed in the case of *Greville* v. *Browne*, 7 H. L. Cases, 688, decided in the house of lords in 1859, and which *Smith* v. *Fellows*, and numerous other cases in Massachusetts and New York afterwards followed. In *Greville* v. *Brown*, on page 696-7, Lord CAMPBELL says : "For nearly a century and a half this rule has been laid down and acted upon, that if there is a general gift of legacies, and then the testator gives the rest and residue of his property, real and personal, the legacies are to come out of the realty. It is considered that the whole is one mass ; that part of that mass is represented by the legacies, and that what is afterwards given, is given minus what has been before given, and, therefore, given subject to the prior gift." Again, in the same case, on page 700, Lord CRANWORTH, quoting from Sir John LEACH, "with reference to the words, the rest and residue of my real and personal estate," states the rule thus : " That the rest and residue mean something after something has been deducted. After what has been deducted ? Why, that which has been given before ; and that appears to me to solve the whole difficulty." In accordance with the rules of construction established by these cases of *Smith* v. *Fellows* and *Greville* v. *Brown*, are the decisions in the several cases cited by the counsel and many others which have been decided within the last century and a half.

There is, however, another class of cases of equal authority with those just considered, and in fact, not inconsistent with

them, in which it is held that a legacy when payable out of a specified fund, as from an income, whether an annuity or otherwise, is not a charge upon the principal from which that fund is derived, but must stand or fall with the fund itself. This is when both the legacy thus to be paid and that by which the principal is disposed of, are either, or both specific.

A leading case of this class is that of *Baker* v. *Baker*, 6 H. L. Cases, 616, reported also in 56 Eng. Com. L. R. 691, in which it was held that an annuity could only be paid from the income as directed and that failing, the insufficiency could not be made up from the capital. In this case the testator gave all his real and personal estate to his brother in trust, and directed his trustee to raise thereout and invest in good securities such a sum of money as when so invested should produce the clear annual income of two hundred pounds and pay to or permit his wife to take such income in two half yearly payments during her life or widowhood, and after her decease or second marriage, the said trustee was to stand possessed of the principal and the stocks, funds and securities in which the same should be invested, in trust for himself, brothers and sister in equal shares. The residue of his estate after taking out sufficient to raise the annuity for the wife was given to his brothers and sister. Upon the settlement of the estate the whole amount was insufficient to raise the two hundred pounds. The provision with regard to the residue was, therefore, immaterial, for there was none. It was not the residue of the capital from which the income was obtained, but the residue of the estate after the capital was taken out. Both these legacies were held to be specific. The testator clearly intended that his wife should have the annual income of two hundred pounds during life or widowhood. It is equally clear that he intended that his brothers and sister should have the principal from which that income was to be obtained, that the principal should not be diminished while producing the income. Both these intentions could not be carried out. Which should fail? Evidently that which of necessity must fail, that for which no sufficient means had been provided. If the residue of the capital only had been given, it would have been evidence that

the testator intended that at all events the full annuity should be paid, and the means of paying both legacies would have been provided.

It is noticeable that this case was first decided by the master of the rolls, and the other way upon the authority of *Wright* v. *Callender*, 2 DeG. M. & G. 652, which was a case where the residue of the capital was given over. The appellate court, reversing the decision of the master, admit the correctness of the conclusion in *Wright* v. *Callender*, but distinguish it on the two grounds that there the whole language show that the weekly allowance was to be paid in full, and the residue only was given over.

Another noticeable and instructive feature shown in *Baker* v. *Baker*, is that while it was apparent that the testator supposed that he had property more than sufficient to produce the two hundred pounds yearly, it turned out otherwise, and showed that he was mistaken in his estimate. Instead of drawing an inference from this that he intended the full amount of the annuity to be paid, it was not permitted to affect the construction, on the ground that if it should, the court would "under a state of circumstances never in the testator's contemplation give a different construction to the will, and impose, as it were, a new intention upon the testator."

In all respects this case bears a striking resemblance to the one at bar and would be decisive of it, if the instrument to be construed were a will instead of a deed. No case cited, and so far as we have been able to ascertain none can be, which to any extent weakens its authority. Its reasoning is instructive and satisfactory. Upon grounds already stated, it is stronger for the defendants when applied to the deed.

The language of the deed in question, is so clear and explicit that even without authorities there would seem to be no doubt as to its meaning. The property is first conveyed to the grantees, not in general terms, but each piece by a specific and definite description, "to have and to hold to them, the said Alfred Veazie and Annie Veazie Forsaith, and the survivor of them, and his or her heirs and assigns, in trust, for the following uses and

purposes, and upon the special confidence and trust following, that is to say : To keep and maintain the principal of said trust estates safely invested according to their best judgment, and from the income thereof to pay me the sum of five thousand dollars each year during my natural life, provided the same is called for by me, and payable from time to time as called for." Then comes the provision for the disposition of the remaining income, and that for the support of Miss Bartlett and the provision for the raising of ten thousand dollars. "from the income of the trust property or otherwise" subject to the distribution of the grantor at his decease. Then comes the following provision : "And after the execution of all the trusts herein created, that they, the said Alfred Veazie and Annie Veazie Forsaith, should have and hold said property, the subject of this trust, in whatsoever form it may be and wherever situated, as their absolute property discharged of said trust." Here is the conveyance of specific property to the grantees, which in the end they are to hold absolutely. It may be in a different form from that conveyed, but the same property. They are to hold it not subject to the trust but "the said property the subject of this trust." These words are descriptive of the property they were to "hold absolutely" and not of the manner in which they were to hold it. Hence they were to hold absolutely the same property originally conveyed in whatever form it might be. This grant having been accepted, and a consideration paid in the form of services to be rendered, has all and more than all the sanctity, force and effect of a specific legacy. After the delivery of the deed without fraud it could neither be rescinded nor modified except by the consent of the parties. *Storer* v. *Pool*, 67 Maine, 217. It is true that this grant was in trust and the consideration is an obligation to perform that trust. But this renders the grant none the less specific though the holding becomes absolute only after the discharge of the trust. What then is the trust? for the vital question here is, what has the grantor secured to himself in relation to the annuity. He has not reserved to himself an annuity, with a direction that it shall be paid out of the income, but it is a part of the

income itself. This too has the nature of a specific legacy as clearly as words can make it so. The language is "to keep and maintain the principal of said trust estates * * * and from the income thereof to pay," etc. It is just as much the duty of the trustees "to keep and maintain the principal" as it is to pay the annuity, and their duty is performed in regard to the payment when they pay so much of it as the income will allow. Suppose these trustees should be discharged. This would not annul the deed or modify its terms. Others must be appointed in their place and the obligation would rest upon them to perform the duties imposed by the deed. In that case the present trustees would become *cestuis que trust* simply, with all the rights of property, except the possession, which they now have. The duties of the new trustees would be precisely those resting upon the present ones, but they would be answerable for their faithful performance both to the grantor and the grantees. To the latter for the keeping and maintaining the principal and for the conveyance of the whole of it at the end of the trust, to the former for the payment of the annuity. Here are two trusts. If both cannot be complied with that clearly must fail for which insufficient provision has been made, as in *Baker* v. *Baker*. The present trustees can be required to do no more than would devolve upon strangers under the same deed.

That the grantor made and disposed of two distinct funds, the principal and income of his estate, is further evident from the fact that he did not reserve to himself the whole of the income, but only a portion of it. A part is given to each of the grantees and the payment to these is required in terms just as absolute as to himself. The only difference is that one has the precedence of the other, and only the final disposition is qualified by the words "and what remains of said income if *anything*."

This disposition of the income shows clearly that the grantee had a full belief that the income would be very much more than sufficient to supply his annuity. It may therefore be that he was mistaken in his estimate of the future production of his property. But this cannot be considered in the construction of the deed; otherwise we may construe the deed under "circumstances never

in the contemplation of the grantor and impose upon him a new intention," as in *Baker* v. *Baker*. Much less have we a right to change the construction which the grantees might fairly have given to it when accepted by them and thus impose additional burdens upon them.

The bill prays for a full account of the trust property which has come into the possession of the trustees, of the income received and their application of it. That account has been rendered and it is admitted that it is a true account of all the trust property and money that had at that time come into the hands of the trustees; and that they had paid the several sums and for the purposes stated.

It appears from this account that nothing was received or paid out upon income for the first year of the trust, ending February 27, 1880. The plaintiff claims that two sums which were received at a later date, one of which is credited to income of 1880, the other to the principal, should both have been credited to income for 1879. The trustees not admitting this, say the plaintiff is not entitled to his annuity for that year, as he made no demand for it within the year and thereby forfeited it. As the plaintiff is by the provision of the deed, to receive his annuity each year, "provided the same is called for by me" (him) and as called for, and as the remainder of the income for each year is otherwise disposed of, it must follow that in the absence of a demand or a waiver, he would forfeit his annuity for that year. The plaintiff, however, claims that there was a demand, or if not, a waiver.

There is an allegation in the bill that a demand for the annuity was made each year. This is not denied in the answer, and it is claimed that here is sufficient proof of the demand. The allegation is somewhat indefinite, but it would be admissible evidence of some force tending to show by way of admission, the truth of the statement. But at the hearing it does not appear to have been used as such. The case, however, does show a transaction between the parties, which must be considered equivalent to a demand, or a waiver of one.

In the summer of 1879, one of the trustees, whose notes

constituted a considerable portion of the trust property, died, and his estate proved insolvent. In the uncertainty resulting, the remaining trustee was unwilling to pay any thing upon the annuity until is should be ascertained whether there would be any income. In this emergency, it was agreed between the parties that the plaintiff should raise some money on his own notes indorsed by the trustee, as the plaintiff in his testimony expresses it, "to tide over till we could get something out of the estate." Three thousand dollars, or thereabouts, were thus raised, the notes subsequently paid by the trustees and charged to income for 1880, the year in which they were paid. It is apparent that both parties understood this transaction as having reference to the income for 1879, if there should be any.

It is necessary, therefore, to ascertain whether the case shows any such income.

In the account we find credited to income for 1880, $3780.00 for fourteen months' interest on the Gilman, Webster and Co.'s notes. This appears to have been received April 9th of that year, less than two months from February 27, 1880. Hence the most of that interest was earned during the year 1879, and when received should be credited to that year. Unlike an annuity or a dividend which is not earned until it becomes payable and therefore cannot be apportioned, interest accrues from day to day and can be apportioned. The beneficiary will be entitled to so much as has accrued for the time being, though not payable till a subsequent day. Perry on Trusts, § 556, and cases cited.

Whether by changing this credit, or its proportional part, to the year 1879, where it belongs, will make any difference in the result, is not so apparent; as it is already credited to income and the plaintiff seems to have had the full benefit of it.

The same principles would apply to the item of $437.50, charged to the trustees on income account, April 7, 1880, as one year's interest on the Alfred Veazie note for $6250. A part of this interest must have accrued during the year 1879 and should have been charged to the trustees on that year's income. This note, it appears, was secured and was paid in full and the interest correctly credited to income with the above exception.

It is also claimed that the amount paid on the Alfred Veazie notes, except that above named, which is credited to principal, should in part be credited to income.

These notes were a part of the original trust property. When the maker died, it proved that his estate was largely insolvent. It was not, however, so represented, but it was agreed by all interested, including the plaintiff in this case, that the executors of that estate should convey all the property belonging to it after all other debts were paid, to these trustees in payment of these notes. This property was insufficient to pay the principal and therefore the trustees credited it to the principal of the trust fund, contending that no interest had been paid, while the plaintiff contends that both principal and interest were paid in the same proportion. All the notes were upon interest, payable annually, and the principal of each had become payable at the time of this arrangement. The property conveyed in payment was received by the trustees at different times, and no valuation of it was agreed upon, except that it was receipted for by the trustees at the appraisal made to the executors. If these payments had been made upon the notes in the usual course of business, each payment in the absence of an appropriation by the parties, would have been appropriated to the payment of interest so far as necessary and the balance to the principal, and under this rule all the interest would have been paid and the loss would have fallen upon the principal. It is, however, as clearly competent for the parties in this case to make an appropriation of the amount paid, as in any other. There was perhaps here no appropriation in terms made, but in effect there was. By the implied if not express agreement of both trustees and beneficiary, the notes were discharged, both principal and interest. The executors must have so understood it, otherwise they would hardly have been protected in neglecting to render the estate insolvent. We could hardly expect the plaintiff to have consented to a discharge of his interest without any consideration, for he would have received something if the estate had been rendered insolvent. If then, under such an agreement the notes were as completely discharged as they would have been in insolvency,

we must hold that the interest was paid as well as the principal, that the payments were in effect appropriated to both, and an equal percentage must be allowed upon each. This is also the equitable view of it. Here were two funds for the purposes of the trust, the principal and the interest, belonging to two different parties. Both funds were discharged by the payment of a given sum less than the whole, by the consent of all interested. Why should not the loss be borne *pro rata?*

The authorities cited upon either side, though in some respects unlike this case, sustain the view that the beneficiary is not to sustain more than a ratable share of the loss, with the exception perhaps of *Grabowski's case*, L. R., 6 Eq. 12, in which it was held that there could be no apportionment, but the lesser fund which had been paid into court, must be treated as principal and the annuitant would be entitled to the use of that, but not to the fund itself. The opinion gives no reason or grounds upon which the conclusion is based. The loss occurred by the fault of the trustee, and the claim was for a part of the amount recovered of the trustee to cover the loss of interest or income which would but for the default, have been earned after the loss and before the recovery. The inference is that in the opinion of the court, from the terms of the settlement no such interest or income was earned. Otherwise the case would seem to be overruled by the case of *Cox* v. *Cox*, L. R., 8 Eq. 343, in which the loss accrued before the trustees received the principal, but in which some interest had been earned after it came into their hands and before the amount of the loss was ascertained. In this case it was held that the amount recovered by the trustees, should be apportioned between the capital and interest. But as the beneficiary was entitled to recover interest since the loss, only upon that part which should be credited to the principal in the apportionment, it was necessary to ascertain what amount of capital at the given rate of interest, would produce the amount recovered at the time it was recovered, and the difference between that capital and the sum recovered would be the amount due the beneficiary for past interest, and the division was so made. To the like effect are the cases of *Maclaren* v. *Stainton*, L. R., 11

Eq. 382, and *Parsons* v. *Winslow*, 16 Mass. 361. While these cases are authority for making an apportionment between the capital and interest of the sum received in payment of the notes in the case at bar, they are not so as to the manner in which that apportionment is to be made. In this case as in those, the interest was included in the amount recovered. But in this, the interest had been earned and was a sum due at the time of the compromise. Both principal and interest were definite sums discharged by that compromise, and hence as above stated, the sum received should be ratably divided between the two sums.

In this division it does not follow that the whole amount of interest due upon the notes is to be considered as one sum and credited to income. The trust deed was finally executed February 27, 1879. The plaintiff is entitled to his annuity only from that time. Hence whatever interest had then accrued and was unpaid, if any, should be credited to the principal and that which has accrued since, and before the settlement, should be credited to income for the years in which it was earned, subject, of course to the discount.

As the trustees credited the whole amount received, at the time it was received, to the principal, it will be seen that since that period they have been accounting for the income for the whole fund received, when they were required to account only for that less the amount deducted on account of interest. It does not appear what that income may have been and perhaps it is not material for as they have retained that sum in their hands it is but equitable that they should account for whatever income they may have received from it, and it does not appear that they have accounted for any more.

In 1880 the mills which were a part of the trust property had been leased to Ring and Ayer. By the terms of that lease the lessees had a right to pay a portion or all of the rent in repairs upon the mills. Upon settlement it was found that they had thus paid $2943.36 which sum was allowed them and in the account rendered this item is omitted. The plaintiff claims that it should be credited to income for that year as so much rent received. But it was not received by them as rent, nor

does it appear that the repairs were such as would be permanent improvements or add to the permanent value of the mills, therefore they did not receive the amount as principal. But the conclusive reply to this claim is that by a clear preponderance of testimony it appears that this lease in this form, was made at the suggestion and with the consent of the plaintiff and it is now too late to set up such a claim even if it had been otherwise allowable. There is an item of $837.86 charged to income for 1880, and it is claimed that this should have been charged to principal. On what ground it should have been so charged does not appear. It was paid to the agent having charge of the mills and there is no evidence whatever to show that it or any portion of it was for improvements or permanent repairs, nor was it to put the mills in a condition to be rented, for they had already been leased and prior to that a considerable sum had been taken from the capital and expended in repairs. On the other hand there is abundant proof that none but temporary repairs were made, such as are properly chargeable to income.

It is also claimed that a portion of the repairs made in 1881 should be charged to the capital and not to income, but no particular portion of the amount or any particular item of repair is specified. The same remarks applied to the last item are applicable to the repairs for this year. The plaintiff and all his witnesses testify that no permanent repairs were made but all were temporary,—made only for the purpose of keeping the mills running for the time being, and that they were so is a cause of serious complaint on the part of the plaintiff and the main ground upon which he asks for the removal of these respondents. If then these repairs were properly made they are chargeable to income. If they should have been more permanent and thorough in the first instance, so as to have been properly chargeable to capital, then that they were not so made, may be a cause of complaint. But whether it would be such a cause of complaint as will authorize or require any interference by the court is a question for consideration. Thus is presented the question as to the power and duties of these trustees in respect to these repairs arising from the deed under which they are acting.

The provision of the deed important in this connection reads thus: "To keep and maintain the principal of said trust estates *safely* invested according to their *best judgment*." For this purpose the deed conveys to the trustees the full legal title to the property therein described. These mills were not a part of that property, except as they were covered by a mortgage given to secure some notes which were. It was thought best by all concerned to take the mills under the mortgage together with a sum due from the city of Bangor for an injury done to them by building a dam lower down the river, and discharge the notes. Thus they became the property of the trustees subject to the trust. They were not purchased as an investment but taken as a supposed necessity in payment of a debt. Were they that kind of property which in the exercise of a sound judgment, could properly be purchased as an investment for trust funds? The evidence largely preponderates in favor of the theory that they are not, and what is of more importance still, the trustees unite in saying that in their judgment they are not. There is nothing in the case to show that such is not their "best judgment," or that it is not honestly and faithfully exercised. There is every inducement for them to do so. They are interested not only to keep the property safely but equally interested with the plaintiff in obtaining from it as large an income as is compatible with its safety. This discretion given to the trustees by the deed faithfully exercised is the controlling power. It cannot be subjected to that of the court. It is the judgment of the trustees in which the plaintiff confided and not that of the court. *Sohier* v. *Eldridge*, 103 Mass. 345, 352; *Hawes Place Cong. So.* v. *Trustees Hawes Fund*, 5 Cush. 454; Perry on Trusts, § 511.

We must therefore treat this mill property as the trustees did, not as a fit permanent investment for the trust funds, but to be disposed of in such way and in such time as would be for the interest of that fund, considering both the capital and the income. This disposition necessarily includes the repairs to be made such as should be charged to capital as well as such as may be charged to income. Ordinarily no repairs to such property can be charged to capital. The life tenant whether legal or equitable,

cannot as a general rule thus incumber the remainder. When real estate is purchased for an investment, or however obtained if the trustees decide to keep it as such, they may make such repairs as they deem necessary to put it into a good rentable condition at the expense of the capital; after that they must be kept in repair at the expense of the income. *Sohier* v. *Eldridge, supra; Parsons* v. *Winslow, supra.* Repairs made at the expense of capital, are to that extent an investment of so much of the trust fund; and are therefore justifiable only when the realty upon which they are made is itself an investment and a proper one of that fund. In this case a considerable sum taken from the capital was expended in repairs upon these mills. No complaint that too much was taken, is made; hence whether that was properly taken is not now before the court, nor whether judiciously expended or that such repairs were insufficient as that was a matter within the discretion of the trustees and the case fails to show that they did not act with due fidelity and in accordance with their "best judgment."

Another ground upon which the removal of the trustees is asked is their general bad management arising from a want of experience and incompetency. The proof fails entirely to show any want of good management, either in the repairs which have already been considered or otherwise. The plaintiff himself seems to have had very much to do in the supervision of the repairs, and in other respects the proof shows no cause of complaint. There seems to have been a considerable falling off in the value of the property and a disappointment of what was probably a just expectation of the amount of income to be derived from it. But this appears to be imputable to a change of business and insolvency of debtors and perhaps other causes, rather than to any fault on the part of the trustees.

The allegation that one of them has abandoned all right to any part in the management is negatived by the evidence. It is true that they have to a large extent employed agents to assist in the business affairs of the trust; but this was made necessary by the condition and situation of the property, as well as by the extent of the work to be done, and the case shows that these

agents and assistants were fitly chosen and were not only com-- petent but faithful to the trust reposed in them.

The want of experience or knowledge of business in the trustees: was as well known to the plaintiff at the time of their appoint-- ment as since, and wherever there has been a failure on this: account, if any, the want has been fully supplied in the labor: and advice of men in whom there was no lack in this respect..

These suggestions show that there is no occasion for the court, to intefere by way of injunction to prevent the sale of the mill, property. The proof shows that such an interference would not. be judicious and the plaintiff by the discretion which he gave the trustees in the deed, has taken that power from its jurisdiction.

Thus all that remains to be done is to change the income account so that the portion of interest on the Gilman, Webster and Company notes earned in the year ending February 27, 1880, should be credited to income for that year, instead of to the following year, as it now is. This can be done by an inspec-- tion of the note.

Also apportion the interest upon the Alfred Veazie notes and credit that part which has been paid, upon the principles laid. down in this opinion, to the income of the different years in. which it was earned.

In order to ascertain what interest has been paid upon these notes settled under the compromise, if the parties do not agree upon the appraisal as the value of the property turned out in: payment, it will be necessary to have a master appointed to ascertain that value and the time of the several payments.

This may make some other changes necessary in the account,. such as changing the time for charging the amount paid on the: notes given by plaintiff and indorsed by one of the trustees in: 1879, as that should offset the income of 1879 so far as it goes.

> *Case to stand for the appointment of a*
> *master to adjust the trustees' account in*
> *conformity with this opinion.*

Peters, C. J., Walton, Barrows and Libbey, JJ., concurred.