ISAAC C. GREENE *et al. vs.* ELLEN MARIA GREENE, *et als.*

A testator gave real and personal property in trust.  The greater part of his personalty consisted of a fund of $100,000 which the testator had invested in the business of a banking firm, and which the trustees under the will had retained in the business after the testator's death in accordance with the directions of the will.  The firm having become insolvent made an assignment December 17, 1875, and upon the settlement of its affairs the trustees received of the original investment the sum of $61,692.45, paid to them in two sums, the average date of payment being December 9, 1878.

*Held*, that the sum received by the trustees should be apportioned between the life tenants and remainder-men.

*Held*, further, that the proper mode of apportionment was to ascertain what sum placed at interest on the date of the assignment of the banking firm would have produced the amount realized by the trustees from the investment on the date when they received it and the loss determined, and to credit the sum so

found to the *corpus* of the estate, and to pay the balance of the sum paid to the trustees to the life tenants as income.

The will directed that the expenses of keeping the real estate in repair and insured and for taxes and assessments should be paid out of the income of the personalty. By reason of the loss of a part of the personalty the income of the same became insufficient for these purposes, and the deficiency was made up out of the income of the realty.

*Held*, that in the absence of any provision in the will to the contrary, the ordinary rule which requires the payment of expenses for repairs, insurance, taxes, &c., out of the income of the realty applied, and hence, that the trustees had no authority to reimburse the life tenants out of the *corpus* of the personalty or of both the personalty and realty.

The will conferred authority upon the trustees to change from time to time the investment of any of the trust funds, and even the real estate if necessary to protect any one or more beneficiaries, to any other and others of a like nature as near as may be.

*Held*, that outlays made by the trustees on real estate in changing the structure of buildings in order to provide for modern improvements, such as water closets and bath rooms, and for the plumbing and sewerage incident thereto, especially as such changes were rendered necessary to a considerable extent by municipal regulation, are to be regarded as outlays for improvements, and under the power to change investments should be charged to the *corpus* of the trust estate as sums invested in the respective properties benefited by the improvements.

*Held*, further, that under the power outlays for putting improved real estate purchased by the trustees in tenantable repair are to be deemed a part of the original cost or purchase money, and are chargeable to the *corpus* of the estate.

*Held*, further, that under the power the trustees have authority to use the trust funds in building on vacant land held by them, that being equivalent to the purchase of a new estate.

*Held*, further, that the language directing the change of investment to be "to any other or others of a like nature as near as may be," is not prohibitive of power to change the investment of the personalty into realty or of the realty into personalty, but is to be regarded rather as a suggestion made by the testator in view of the condition of his estate as it existed at the time of his death.

A power given to trustees to sell does not confer a power to mortgage, and, such powers being construed strictly, a power to make conveyances should not have a broader construction than a power to sell.

Hence, where it is not clear that trustees have a power to mortgage the trust estate under a power conferred upon them by will to make any and all conveyances which may become necessary in the performance of the trusts for the benefit of the estate, the trustees should obtain the sanction of the court before making any such mortgages.

BILL IN EQUITY for instructions.

*November* 10, 1896. MATTESON, C. J. This is a bill for instructions. Complainants are the trustees under the will of Rufus Greene, formerly of Providence, deceased, and the

respondents are his widow, Ellen Maria Greene, a grand-child Mary C. Greene, the only child of Rufus Greene, Jr., deceased, who was a son of the testator, and the testator's sons, Robert L. Greene, Archer Greene and Howard Greene. A copy of the will may be found in *Robinson* v. *Greene,* 14 R. I. 182. The trusts created by the fourth, fifth and sixth clauses of the will are terminated, and the respondents with the complainant Isaac C. Greene are all the persons in being beneficially interested in the remaining trusts of the will.

By the seventh clause of the will the trustees were directed to retain that portion of the testator's personal estate invested in the business of Greene & Cranston, bankers, as it then was, so long as the testator's partner in their judgment should be physically able to manage the same, or until he should signify in writing to the trustees his unwillingness further to continue the business, or until in the judgment of a majority of the trustees the business should become hazard-ous and unprofitable.

The bill sets forth that at the making of the will the larger part of the testator's personal estate, to wit, $100,000, was invested in the business of Greene & Cranston, which was retained in the business after the decease of the testator, agreeably to the direction of the will ; that in 1875 the firm of Greene & Cranston became embarrassed, and on December 17th of that year made an assignment ; that the affairs of the firm were settled in the latter part of 1878 and early part of 1879, the trustees then in office receiving of the $100,000 invested by the testator in the business $61,692.45, paid to them in two sums, the average date of payment of which was December 9, 1878. This sum they credited to the *corpus* of the estate. The life tenants claim that this was erroneous, and that an allowance should have been made to them from the sum received for the loss of income suffered by them between the date of the assignment, December 17, 1875, and the date when the sum was received, December 9, 1878.

We are of the opinion that this claim is well founded. The authorities hold that when a fund is held in trust for

the benefit of one person for life, and another in remainder, and a part of the fund is lost because of the insecurity of the investment, the loss is to be apportioned between the life tenants and remainder-men. *Cox* v. *Cox*, L. R. 8 Eq. Cas. 343 ; *Maclaren* v. *Slainton*, L. R. 4 Eq. Cas. 448 ; *Roosevelt* v. *Roosevelt*, 5 Redf. 264 ; *Veazie* v. *Forsaith*, 76 Me. 172, 190 ; *Parsons* v. *Winslow*, 16 Mass. 361 ; *Turner* v. *Newport*, 2 Phil. 14 ; *Re Tinkler's Estate*, L. R. 20 Eq. Cas. 456 ; *Moore* v. *Johnson*, 54 L. J. 432 ; 52 Law T. 510 ; *Re Ancketell's Estate*, 27 L. R. Ir. 331 ; *Hagan* v. *Platt*, 48 N. J. Eq. 206 ; *Tuttle's Case*, 49 N. J. Eq. 259. The only case which has come to our notice denying the right of apportionment is that cited by Mr. Spink representing contingent interests of remainder-men not in being, viz., *Re Grabowski's Settlement*, L. R. 6 Eq. Cas. 12. But this case was overruled by *Cox* v. *Cox*, L. R. 8 Eq. Cas. 343 ; 2 Lewin on Trusts, \*914. We are of the opinion, therefore, that an apportionment of the amount received by the trustees should have been made between the life tenants and remainder-men.

The question is raised as to the method in which the apportionment should have been made. The life tenants suggest that, as the \$100,000 invested in the firm of Greene & Cranston was intended by the testator to be a permanent investment, the proper mode of apportionment would have been to ascertain the average yearly profit earned by the investment prior to the assignment, multiply it by the 2 & $357/365$ years during which the affairs of the firm were in liquidation, and then to divide the sum received in liquidation between the life tenants and remainder-men, in the proportion which the \$100,000 originally invested bears to the amount of income ascertained in the manner stated for the period specified. They have cited no authority which holds that such a method of apportionment in a similar case is proper. They have referred to *Westcott* v. *Nickerson*, 120 Mass. 410, in which the court passed on the relative rights of life tenants and remainder-men to a fund received on the winding up of a partnership. The testator had directed that the money which he had invested in the partnership should

remain for a short term after his death merely for the purpose of winding up the business and ascertaining the amount of the fund, and not as a permanent investment.   Moreover, the amount received from the partnership, on the winding up of the business, was considerably in excess of the amount which would have been received if the business had been closed at the death of the testator, so that the court were called upon to apportion a surplus or profit on the fund invested, and not, as we are in the present instance, to apportion a loss of a part of the principal.   Though the court referred to the consideration that the direction of the testator was that the fund should remain in the business only for a short period for the purpose of winding up the partnership, and intimated that it might have affected the decision if the direction had been that it should remain as a permanent investment, the case is too radically different from the case at bar to control our decision.   Besides, there is no reason to suppose, the firm of Greene & Cranston having become insolvent, that the fund invested would have earned any profit during the years that the business was in liquidation.   The most that can be presumed is that the ordinary rates of interest might have been received upon the assets remaining.

Different methods of apportionment have been followed in the cases.   Sometimes the apportionment has been made by computing interest on the amount realized from the investment during the period that the life tenant has been deprived of the income, and the interest so computed being deducted from the amount realized and paid to the life tenant, the remainder is held to constitute the future capital.   This was the method adopted in *Parsons* v. *Winslow*, 16 Mass. 361 ; *Turner* v. *Newport*, 2 Phil. 14 ; *Re Tinkler's Estate*, L. R. 20 Eq. Cas. 456.   In *Re Hubbuck*, 1896, 1 Ch. 754, and in *Hagan* v. *Platt*, 48 N. J. Eq. 206, and *Tuttle's Case*, 49 N. J. Eq. 259, it was held that the loss should be apportioned between the life tenant and the remainder-men in the proportion which the principal sum involved in the insufficient security bears to the interest due upon it at the time when the security is realized upon and the amount of loss is deter-

mined. *Cox* v. *Cox*, L. R. 8 Eq. Cas. 343, was a case in which the testator had bound himself in his life-time that six thousand pounds should be paid to the trustees within three months after his decease, to be held by them for the benefit of his widow for life, with the remainder to the children of the marriage. At his decease his estate was so involved that nothing was realized from it for several years, and finally not enough to pay the principal sum. The Vice-Chancellor stated the proper mode of apportionment to þe to ascertain what sum of money at the death of the testator put at interest would produce the amount finally realized, and to invest this as the principal fund and pay so much as represented the interest to the tenant for life. This was the rule followed in *Roosevelt* v. *Roosevelt*, 5 Redf. 264. See also *Maclaren* v. *Stainton*, L. R. 4 Eq. Cas. 448 ; *Veazie* v. *Forsaith*, 76 Me. 190. This rule seems to us well calculated to do justice between the life tenants and the remainder-men, and we therefore adopt it and instruct the trustees to ascertain what sum placed at interest on the date of the assignment of Greene & Cranston would have produced the $61,-692.45 realized from the investment on December 9, 1878, when it was received and the loss determined, and to correct the account by substituting as a part of the *corpus* of the estate the amount so found, instead of the full sum of $61,692.45, and to credit the difference between these sums, representing the interest on the sum ascertained and carried to the *corpus* of the estate as stated, to the life tenants as income.

By reason of the loss to the personal estate of the part of the fund invested in the partnership of Greene & Cranston, as stated, the income of the personal estate became insufficient to keep the real estate in repair and insured, and to pay the taxes and assessments, as directed by the first clause of the will ; and the deficiency at the time of the filing of the bill, amounting to $42,802.93, has been made up from the income of the residuary real estate. It is suggested in behalf of the life tenants, that it was the intention of the testator, manifested by the direction of the first clause of the

will, that the beneficiaries under the eighth clause should receive the gross rents and profits of his residuary real estate, subject only to the annuity to Rosa Keelwa, just as his daughters received the gross rents and profits of the real estate directed to be paid to them by the fourth, fifth and sixth clauses ; and it is argued that, on the failure of the personalty to afford sufficient income for the purposes specified, the deficiency should be made good out of the *corpus* of the personalty, or of both the personalty and realty. The question, therefore, is raised by the bill whether the trustees have authority to reimburse the life tenants out of the *corpus* of the personalty or of both the personalty and realty, for moneys taken from the income of the residuary real estate to make good the deficiencies of the income of the personalty, for the purposes stated.

The contingency that the income of the personal estate might become insufficient for the maintenance of the real estate and the payment of taxes and assessments on it, apparently was not present to the mind of the testator in the framing of his will. If it had been, it is possible that he would have provided some method of making good the deficiency. But as he has made no such provision, neither the trustees nor the court can make it for him. *Grinnell* v. *Baker*, 17 R. I. 41. We are of the opinion that the ordinary rule which, in the absence of any provision to the contrary, requires the payment of expenses for repairs, insurance, taxes, &c., out of the income of the real estate, must apply, and we, therefore, decide that the trustees have no authority to reimburse the life tenants for the expenditures of the income of the residuary real estate, in making up the deficiency of the income of the personal estate for the payments mentioned.

The bill sets forth that, in the management of the real estate it has been found necessary, for the advantageous rental thereof, to make changes in the structure of the buildings to provide for modern improvements, notably for water closets and bath rooms, and the additions of plumbing and sewerage coincident therewith, not contemplated by the testator, which have required outlays amounting to $4,630.72 ;

and the question is made whether the trustees are authorized to charge these outlays, and any future outlays of the same character, to the *corpus* of the estate.

We are of the opinion that the outlays specified, which have been or may hereafter be made for structures of a permanent nature, and not merely to renew or replace what has become defective, especially in view of the fact that these outlays have been rendered necessary to a considerable extent by municipal regulations, are not to be regarded as outlays for repairs, but rather as for improvements (*State* v. *White*, 16 R. I. 591, 594) ; and, hence, that, under the power to change the investment of the trust funds conferred on the trustees, these outlays may be charged by them to the *corpus* of the estate as sums invested in the respective properties benefited by these improvements. *Stevens* v. *Melcher*, 80 Hun, 514 ; *Stephens* v. *Milnor*, 24 N. J. Eq. 358 ; *Watts* v. *Howard*, 7 Met. 478 ; *Sohier* v. *Eldredge*, 103 Mass. 345 ; *Abell* v. *Abell*, 75 Md. 44, 64 ; 13 Am. & Eng. Encyc. of Law, 218, and note.

We are of the opinion that outlays for putting improved real estate purchased by the trustees in tenantable repair, are properly chargeable to the *corpus* of the estate. Such expenditures, being necessary to put the buildings in a condition to be occupied, may well be deemed a part of the original cost or purchase money ; the expenses of subsequent repairs being, however, a charge on the income. *Parsons* v. *Winslow*, 16 Mass. 361 ; *Stevens* v. *Melcher*, 80 Hun, 514 ; 2 Perry on Trusts, 3d ed. § 552.

As the will confers authority on the trustees to change from time to time, if in the opinion of a majority of them it should become beneficial and necessary, the investment of any of the trust funds, and even the real estate if necessary to protect any one or more beneficiaries, it would seem to follow that they would have power to build on vacant land held by them, and to use the trust funds for that purpose. In *Re Newman's Settled Estates*, L. R. 9 Ch. App. 681, 683, Lord Chief Justice James remarks : "The cases proceed on the principle that the erection of a building is substantially

the same thing as the purchase of a new estate ; " and again, in *Drake* v. *Trefusis*, L. R. 10 Ch. App. 364, 366, " The spending money in building a house on a vacant piece of ground forming part of the settled property is, in substance, the same thing as buying the house." See also *Re Johnson's Settlements*, L. R. 8 Eq. Cas. 348 ; *Re Lord Hotham's Trusts*, L. R. 12 Eq. Cas. 76 ; *Stevens* v. *Melcher*, 80 Hun, 514, 531 ; *Sohier* v. *Eldredge*, 103 Mass. 345, 352.

The only language, in the power conferred on the trustees to change the investment of the trust estate, which can be supposed to operate as a restriction, is the direction that the change of investment is to be " to any other and others of a like nature as near as may be." [1] We do not think that this language should be regarded as prohibitive of the power of the trustees to change the investment of the personalty into realty or the realty into personalty in the present situation of the estate, if in the judgment of a majority of them such change would be beneficial and necessary. It was the intention of the testator, as has been seen, that the expenses of caring for and managing the realty should be paid out of the income of the personalty. For this reason probably he intended that the trust estate should remain divided between personalty and realty in substantially the same proportions as existed at his death, and he accordingly, with this intention in mind, suggests to the trustees that, in changing the investment of the trust estate, the change should be to other property of a like nature as near as possible, i. e. that personalty should be changed to personalty and realty to realty. That intention, however, has been frustrated by the loss to the personalty resulting from the loss on the investment in the partnership of Greene & Cranston. The proportion be-

---

[1] This part of the will reads as follows :—

" With full power in said Trustees to make any and all conveyances with as good title as I myself might have made, which may become necessary in the performance of their trust and for the benefit of my said estate.

" As well as to change from time to time if in the judgment of said majority it may become beneficial and necessary the investment of any of said trust funds and even the real estate, if necessary to protect any one or more beneficiaries, to any other and others of the like nature as near as may be."

tween the personalty and realty having thus been destroyed, there is no reason for the continued operation of the suggestion.

The power conferred on the trustees to make any and all conveyances which may become necessary, in the performance of the trusts for the benefit of the estate, is given in connection with the power to change the investment of the trust estate. We think it probable that it was intended to be merely ancillary to the latter power. But, apart from this, a power to sell given to trustees, it is held, does not confer a power to mortgage. *R. I. Hospital Trust Co.* v. *Commercial Nat. Bank,* 14 R. I. 625, and cases in note on p. 629. Such powers are construed strictly, and we can see no reason why a power to make conveyances should receive a broader construction than a power to sell. As the power of the trustees to mortgage the trust estate is not clear, we think they should obtain the sanction of the court before making such mortgages. *Schulting* v. *Schulting,* 41 N. J. Eq. 130 ; *Rogers* v. *Rogers,* 111 N. Y. 228 ; *Re Jackson,* L. R. 21 Ch. Div. 786 ; *Glover* v. *Barlow,* L. R. 21 Ch. Div. 788, note 9 ; *Re Morris,* 63 Hun, 619.

*Joseph C. Ely & Herbert Almy,* for complainants.

*John F. Lonsdale,* for respondents.