WESTCHESTER COUNTY.—HON. OWEN T COFFIN, SURROGATE.—June, 1887.

TRUST CO. *v.* HALL.

*In the matter of the judicial settlement of the account of the* FARMERS' LOAN & TRUST COMPANY, *as trustee of* CHARLES HALL, *and others, under the will of* JAMES P. HALL, *deceased.*

Where trustees invested $48,000 on mortgages which were subsequently foreclosed at an expense, for costs, taxes, etc., of $5,680.09, and the property was bid in by them for $32,500, and subsequently sold by them for $50,250,—

*Held,* that the difference between the last two sums was not profit, on which a life beneficiary could base a claim for income—the whole amount invested, including costs, etc., exceeding the amount realized; the result being a loss to the estate, by reason of the investment, of over $2,000.

Roosevelt v. Roosevelt, 5 *Redf.*, 264—distinguished.

Testator's will gave the use of one half of his estate for life to a daughter, remainder over; and the other half to four infant grandchildren, to to be paid to them, in equal shares, as they respectively became of age. Of the latter, J. became of age in 1876, when an accounting was had as to his share, and he was paid the same, in full, including his share in the mortgages then outstanding. Subsequently, as each of the other grandchildren became of age, they were not, on the accountings had, paid in full ; but reservations were made, of sums supposed to represent their interests in such investments, which sums varied in amount on the different accountings.—

*Held,* that such sums were merely speculative, and did not determine each one's interest in what was ultimately realized.

The basis for distribution, in such case—fixed.

JAMES HALL died previously to 1873, leaving a last will and testament. He left him surviving a widow, one daughter, Jane E. Kelemen, and four grandchildren, viz : James R. Hall, Abigail Hall, Charles Hall and Agnes or Mary Agnes Hall. After making suita-

ble provision for his wife, he gave one half of the residue of his estate, in trust, to his executors, to apply the rents, interest and income arising therefrom, to the use of his daughter Jane, during her life, and, at her death, to convey said share to her issue, or if she should leave none, then to the grandchildren above named. The other half was to be held in trust for said grandchildren, to be equally divided among them; and their respective shares, with the income thereon, was to be paid to them as they severally became of full age. Cornelius J. DeWitt and Gershom B. Weed qualified and acted as executors and trustees. The former died subsequently to 1873, the latter continuing to act as trustee down to about 1882, when he died, and was succeeded by the Farmers' Loan & Trust company, the present trustee. In June, 1873, the executors rendered an account, and a decree was entered by which the share of Mrs. Kelemen, of which she was entitled to the income, was fixed at $93,517.25, and the share of each grandchild at $23,379.31.

In May, 1876, the executors purchased a mortgage given by Harriet Sanford to Jane E. Kelemen, to secure $50,000. This had been assigned by Mrs. Kelemen to Samuel E. Lyon, and by him to the then trustee, for $37,000, as nearly as could be ascertained. It was foreclosed by the trustee, who, in 1879, bought in the property mortgaged, for $25,000, the amount of the judgment, for principal, interest and costs, being $44,071.48. The trustees also invested $11,000 on a mortgage given by one Martine, which was subsequently foreclosed, and, in 1880, also bought in by the trustee, for $7,500, the amount of the judgment

being about $12,000 for principal, interest, costs, etc. After the investments, and before the foreclosure of these mortgages, in 1876, James Hall became of age; an accounting was had as to him, in which these mortgages were reckoned, and he was paid his share of the estate, and receipted therefor, in full. In 1878, Abigail Hall became of age, and a like accounting was had as to her share, and she was paid the same, including her interest in the Sanford mortgage, in full, except only the Martine mortgage, in which her interest was estimated to be $1,333.91, or one eighth of its supposed value. Charles became of full age in 1880, when a like accounting was had as to his share, and there was found due and paid to him $28,945.16, exclusive of his interest in the Sanford property which had been purchased and which, estimating the value of the property at $25,000, was placed at $3,125 (one eighth), and also exclusive of his interest in the Martine property, which, estimating the property at $7,500, was placed at $937.50, or one eighth, and further, excluding a Hopkins mortgage in which his interest was estimated at $500. Agnes became of age in 1886, when an accounting was duly had as to her share, when she was paid in full, with the exception of her interest in the same investments; that in the Sanford property being estimated at $4,728.54, and in the Martine property at $2,051.54, or one eighth of the estimated value of the whole.

The Sanford property had lately been sold for $45,000, and the Martine property for $5,250. All parties were before the court.

TURNER, LEE & McCLURE, *for trustee.*

TOWNSEND WANDELL, *for Jane E. Kelemen.*

CLARENCE CARSKADDAN, *for Agnes Hall and others.*

THE SURROGATE.—The facts in this case are mainly gathered from the records and files in the office, and from statements made by counsel in their briefs. No oral testimony was taken, and no charge is made that the present trustee or any of its predecessors have culpably mismanaged the affairs of the estate. The chief question concerns the distribution of the fund admitted to be in hand. This amounts, without reckoning some small matters of income and payments, to $50,259. As James Hall has been paid his share in full, including the Sanford and Martine mortgages, then outstanding, he has no interest in the matter.

Counsel, in their briefs, dwell much upon the different modes of stating the interests of the parties, adopted on the various accountings that have been had. This is calculated to lead the mind astray from a just and comprehensive view of the subject. It seems immaterial to a proper adjustment, at this stage of the case, that different amounts, based upon hypothetical values of the securities, which varied on the occasion of each settlement, except in the case of James, were deducted from such values. Such estimates were merely tentative, with a view, apparently, of showing approximate results, at different times. The whole subject was left open to abide the event of the conversion into money. That event has occurred, and more has been realized than was estimated, but as nearly as I can discover, less than the sums originally invested. The excess, therefore, over the estimated

value, cannot be treated as income. Nor does the fact that the two parcels together have sold for more than the added amounts for which they were bought in, render the excess an accretion or increase of the estate. It is only restoring to the estate what was taken from it in order to make the investments in the first place. Hence, it must be regarded as a part of the *corpus* of the estate, and must be dealt with as if it were an original integral part of the assets of the deceased. In no sense can it be regarded as income, as is the contention on the part of Mrs. Kelemen.

There is then a principal fund of $50,250 for assignment and distribution among those entitled. It would be a very simple matter to assign one half to the fund of which Mrs. Kelemen is entitled to the income and one eighth to each of the four grandchildren; but this cannot be done because James has been finally settled with, and has had his share of it, while Abigail has already received her share in the Sanford investment but is still entitled to her share of what the Martine property realized. Thus, the matter is somewhat complicated. It does not appear how either of them was paid, whether out of the pockets of the trustees, or otherwise. At all events, it is agreed that they were so paid. If the trustees paid them, they have a right to reimbursement. But no claim is made to that effect on behalf of the trustee Weed during whose administration they were paid, nor was any made by his administrator in 1882, when he accounted for and paid over the trust fund in Weed's hands to the present trustee. If he took the funds from other portions of the estate, they must be re-

placed.   Should it appear, in either event, that the
legatees were paid less than what would otherwise
have been their just proportions, the difference will
not belong to the trustees, but must be properly di-
vided between Mrs. Kelemen's interest, and Charles
and Agnes.

The fact that James and Abigail have both aban-
doned or discharged any claim on account of increase
in the Sanford investment, does not clothe the amount,
to which they would have otherwise been entitled,
with the character of a lapsed legacy.   Even were it
such, it would not fall into the residuum, of which
Mrs. Kelemen and the Hall children are the legatees,
for the reason that the surviving residuary legatees
cannot take the lapsed legacy of a co-residuary lega-
tee.   This would involve the absurdity that it would
pass to the next of kin, among whom they are num-
bered, when they had released their claim.

It is not easy to understand how it happens that
James R. has been paid his full share of both mort-
gages, and Abigail her full share of the Sanford mort-
gage, and yet that the proceeds of both now in hand
for distribution are more than the original invest-
ments.   If the amount paid for the Sanford mortgage
was $37,000, the sum of the two shares paid to them
was $9,250; add the full share of the Martine mort-
gage paid to James R. and the amount is about
$10,500.   The mystery is, whence was this sum, so
paid, derived.   As counsel have not touched upon this
question in the briefs submitted, it must be assumed
that it is susceptible of a solution which leaves the
fund to be distributed among those now apparently

entitled to it.   All have been settled with and paid, or had assigned their interest in all of the estate, except these Sanford and Martine matters, save James, fully paid.   After the settlements with James and Abigail, these mortgages were foreclosed, and the properties purchased by the then trustee, at an expense of $4,680.69 to the estate, for costs, taxes, etc., incurred and paid before the present trustee was appointed.   This sum added to the amount originally invested makes the whole cost, $52,680.69, for which there is to show $50,250, the difference being the net loss to the estate.   Hence, counsel are in error in basing any arguments upon the theory that there has been an increase of the fund.

Under all these circumstances, the difficult question recurs as to how the fund in hand shall be divided among those having an interest in it.   The will gives one half to Mrs. Kelemen, and the other half in equal shares to the four grandchildren, but one of them has been fully paid without it, and another has only a partial interest.   But Mrs. Kelemen and Charles and Alice only, are interested exclusively in the Sanford proceeds—which is $45,000.   If it were divisible among all, according to the will, Mrs. Kelemen would take as her half $22,500 and each grandchild one quarter, or $5,625, but as two have, as stated, been paid, it must be divided also among the three, regarding the rule fixed by the will.   The two shares thus paid amount together to $11,250.   Of this sum Mrs. Kelemen will take $7,500—making the whole amount of her share $30,000, and Charles and Agnes will each take $1,875—making the share of each $7,500—

together $15,000. As to the Martine investment, James' share alone has been paid, and the division among those entitled will give Mrs. Kelemen her half, $2,625, increased by her share of James' one eighth (say, $656.05) $375.05, making it $3,000.00—while each of the three shares of Abigail, Charles and Agnes ($656.25) will be increased $93.75, making each of their shares $750.

The statement for distribution will, therefore, stand thus:

|  |  |  |  |  |
|---|---|---|---|---|
| Mrs. Kelemen, share account Sanford | | | | $30,000 |
| "            " | Martine | | | 3,000 |
| | | | | $33,000 |
| Abigail, share Martine | | | | 750 |
| Charles, " | Sanford | | $7,500 | |
| | " | Martine | 750 | $8,250 |
| Agnes, " | Sanford | | $7,500 | |
| | " | Martine | 750 | $8,250 |
| | | | | $50,250 |

Subject, of course, to commissions, expenses, etc.

It may be proper to remark that the various trustees very properly never separated the funds into shares and made investments for each beneficiary, but invested for all. I am not informed as to whether Mrs. Kelemen has issue to take the remainder after her life interest is ended, or whether these four grandchildren will probably take it, nor is it regarded as of much moment. No reason is discovered for going into any calculation as to what portion of the fund to be distributed is to be regarded, as capital, and what portion income, first, because there is no sum to be considered in the light of income, and no question as

between a life beneficiary and remaindermen, and second, because the loss or gain, occurred on loans made by the trustees in the course of administration, in making investments and not by the decedent. The case of Roosevelt v. Roosevelt (5 *Redf.*, 264) is, therefore, not in point. As I have endeavored to show, there was a loss of upwards of $2,000 growing out of these investments, and that can only be apportioned by according to each a proper share of the fund remaining. If Mrs. Kelemen has issue who are remaindermen as to her share, they are not before me, and their rights could not be affected by any adjudication here made. As no complaint is made as to the conduct of any trustee in the matter, it would not seem that Mrs. Kelemen is entitled to any interest other than that actually earned. Of course, Abigail, Charles and Agnes are also, and for a like cause, deprived of such interest as their portions might otherwise have earned.

I have not aimed to give exact figures, for a decree, nor to go into detail as to the income from, and expenses incurred in carrying, the Sanford and Martine properties. A ready excuse for this is found in the fact that no account appears to have been filed. Those are matters of detail. The effort has been to fix some proper basis for the distribution of the fund remaining on hand. As to other matters, counsel can be heard on the settlement of the decree; and especially on any matter that may have been overlooked.

Costs, to be taxed, are allowed to all parties, out of the fund.